### 45993. O'DONNELL v. THE STATE.
(374 SE2d 729)

CLARKE, Presiding Justice.

Appellant's trial for the murder of his brother's estranged wife resulted in a conviction and a life sentence.[1] The evidence showed that the victim was last seen alive at appellant's apartment where she went to buy drugs the morning of February 8, 1987.

The victim's body was found in her automobile in an office park very close to appellant's apartment; appellant's apartment stood approximately two and one half minutes by car and one minute longer by foot from the murder site. The victim had been shot three times in the head at close range. The DeKalb medical examiner determined that the shots came from either a .38 calibre pistol or a .357 magnum while the victim was sitting in her automobile. Her purse contained $105.00, as well as several credit cards and some marijuana, so robbery was ruled out as a motive for the killing. There was no evidence of a struggle. No murder weapon was found.

In January, 1987 appellant borrowed a .357 Smith and Wesson pistol from Stephen Richey. This weapon contained silver-tipped hollow point bullets, the same bullets used to kill the victim. Appellant never returned the gun and told Richey that it had been stolen from his car in January. He called Richey the morning of February 8, 1987 and asked Richey to come to his apartment. Richey was there when the victim arrived. The victim spent about fifteen minutes at appellant's apartment, made two telephone calls, then left with appellant. Richey remained at the apartment. Appellant returned twenty minutes later without the victim. He went immediately upstairs where Richey could not observe his actions. Appellant remained upstairs for ten minutes, then the two men left the apartment to pick up appellant's son. Appellant told Richey to tell anyone who asked that they had driven to a certain location to apply for jobs, even though they had not. Later that night appellant called Richey to reiterate his prior instructions.

A police search of appellant's apartment on February 15, 1987 revealed blood spots in the bathroom sink of the blood type belonging to appellant and the victim. Two tally sheets found during the search revealed payments to be made from a $10,000 figure at the head of the sheet. When he was questioned by the authorities, appellant made four conflicting statements. He denied killing the victim.

---

[1] The crime was committed February 8, 1987. O'Donnell was arrested February 13, 1987. He was tried and found guilty by a jury and sentenced to life imprisonment on June 18, 1987. His motion for a new trial was denied June 2, 1988. A notice of appeal was filed June 23, 1988. The court reporter's transcript was certified by the clerk of the Superior Court of DeKalb County on February 1, 1988. The case was docketed to this court July 13, 1988. The case was submitted for decision August 2, 1988.

The evidence showed that appellant's brother would receive $75,000 under two insurance policies on his wife's life and would also be the beneficiary of a reduced pension to be received at her death. Appellant and his brother admitted to having financial difficulties at the time of the victim's death.

In January, 1987 appellant asked his boss if he knew of anyone who would "fill a contract." Appellant told him he was going to get his sister-in-law and mentioned the figure of $10,000. He also told his boss's wife that he could kill someone if the price were right.

1. Appellant first argues that the evidence failed to prove guilt beyond a reasonable doubt by excluding every reasonable hypothesis. Appellant states no evidence located him at the victim's car or even in the parking lot where she died near the time of her death. No medical evidence established the time of death. Appellant espouses several alternative theories of who may have committed the crime which were presented to and rejected by the jury.

While it is true that appellant was convicted by circumstantial evidence, a trier of fact could have found beyond a reasonable doubt that appellant committed the crime. We are required to review the evidence in the light most favorable to the verdict, and since the evidence adequately supports the verdict, it must be upheld on appeal. *Pierce v. State*, 243 Ga. 454 (254 SE2d 838) (1979).

2. The trial court charged the jury that witnesses are presumed to speak the truth, unless they are impeached in some manner as provided by law. Appellant argues that this charge was in error. Appellant contends Richey should have been impeached when he testified as to what transpired at appellant's apartment and between the two men the day of the murder; however, appellant did not testify at trial, so there was no attempt to impeach the testimony by appellant's version of the facts.

Appellant complains that he was unfairly convicted because of his refusal to testify. Appellant cannot exercise his right to not testify as a trial tactic, and then be heard to complain that his failure to testify prejudiced him.

The charge that witnesses are presumed to speak the truth is not unconstitutionally burden-shifting, when the judge instructs the jury as to how the presumption of credibility may be overcome and gives explicit instructions on the presumption of innocence and the state's burden of proving guilt beyond a reasonable doubt. *Cupp v. Naughten*, 414 U. S. 141 (94 SC 396, 38 LE2d 368) (1973). The trial court gave an extensive charge and specifically instructed the jury that it was the ultimate factfinder and was responsible for determining whether the witnesses spoke the truth.

3. Appellant gave four statements to the police after he was arrested February 13, 1987. The court held a *Jackson v. Denno* hearing

and ruled that the statements were given voluntarily. When the state offered the earliest statement into evidence, the judge stated he would adhere to the prior ruling in the case, meaning that the statement would be admitted pursuant to the ruling in the *Jackson v. Denno* hearing. Apparently this statement was not covered at the hearing. Appellant moved for a mistrial on the grounds that the trial court had commented on the evidence. Although there was no specific ruling at the *Jackson v. Denno* hearing regarding the earliest statement, we find no error.

The evidence showed that appellant was read his *Miranda* rights and gave a statement on February 13, 1987 after stating that he understood his rights. On February 14, 1987 appellant was again read his *Miranda* rights and again signed a *Miranda* waiver. Appellant made his statement which was recorded by a detective, then signed by appellant after he made one correction. No questions were asked in the hearing about whether the statement had been given concerning hope of benefit or fear of injury. The detective testified that he never denied appellant food, drink or the right to use the bathroom in any of the interviews he had with him. Appellant never asked for an attorney. The detective testified that at a later interview he did not physically or verbally threaten appellant or promise leniency to appellant. The detective testified that he never promised appellant that if he cooperated with police, he would help him obtain bond.

Appellant also argues that his February 14, 1987 statement was not voluntary. The evidence supports the trial court's ruling that all the statements were voluntarily made and appellant had voluntarily waived his *Miranda* rights.

4. In the early morning of February 9, 1987 the police approached appellant, told him his sister-in-law had been murdered and asked him for any information he may have about the case. The trial court admitted appellant's statement into evidence. Appellant maintains he was in custody when the statement was made and contends this was a critical stage in the proceedings at which he had the right to counsel and at which he should have been read his *Miranda* rights.

This was not a critical stage in the proceedings. The February 9 interview was merely a general investigation of the crime. Appellant went voluntarily to the police station where he was questioned. He was not under arrest at the time, was free to leave and did leave after the interview. The police gave him a ride to the police station, because his automobile was not working, but this does not mean that he was in custody. A defendant is not in custody and entitled to *Miranda* warnings when he is only being questioned by the police and is not a suspect in the case. *Hardeman v. State*, 252 Ga. 286 (313 SE2d 95) (1984).

By the same token, a defendant's right to counsel during interro-

gation does not apply unless the person wishing to invoke the right has been accused of a crime. Since appellant was not a suspect at this time and was not in custody, he was not entitled to be advised of his right to counsel. See *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

5. Appellant argues that the signed waiver of his *Miranda* rights regarding his final three statements to the police was incomplete and therefore ineffective. Appellant contends the authorities did not state he had the right to stop the investigation at any time. The record refutes appellant's contention; the evidence shows the detective read the entire *Miranda* charge to the defendant, including his right to terminate the investigation. Appellant signed a written waiver which specifically said he could decide at any time to not answer any questions or make any statements. In fact, appellant told the interviewer at one point that he wished to terminate the interview, and the interview was terminated.

6. Two days after appellant's trial began and before opening arguments had begun, the judge became aware that an alternate juror told a person unrelated to this case that two children had seen appellant shoot the victim and that it was an open and shut case. The trial court stated that the comments were improper and dismissed the juror at appellant's request. Appellant argues that the trial court should have declared a mistrial. We disagree.

The court questioned the remaining jurors individually about the incident. The record does not reveal that any other jurors heard the comment. In addition, appellant did not move for a mistrial when this occurred; appellant merely requested that the juror be dismissed. Issues not raised at trial cannot be considered for the first time on appeal. *Prince v. State*, 257 Ga. 84 (355 SE2d 424) (1987).

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 6, 1989.

*Thomas P. Lenzer, Robert W. Lenzer*, for appellant.
*Robert E. Wilson, District Attorney, Barbara Conroy, Assistant District Attorney, Michael J. Bowers, Attorney General, Mary Beth Westmoreland, Assistant Attorney General*, for appellee.