## S89A0256. HARMON v. THE STATE.
### (388 SE2d 689)

PER CURIAM.

Jeffrey Harmon lived with Betty Talley and her 27-month-old son, Courtney Reese. On the afternoon of July 1, 1988, Talley left Courtney in Harmon's care for a brief interval. She testified that upon her return she noticed that Courtney had been crying, and ap-

peared to be unhappy. Later that evening, Courtney was taken to the hospital because he was breathing abnormally, and blood had been found on his body and clothing. The examining physician found a two-inch tear in the child's rectum and colon, which had caused his abdominal cavity to fill with fecal matter, and resulted in peritonitis, toxic shock, and renal and pulmonary failure. The doctor stated that the implement making the tear must have been inserted approximately two inches into his body. Two days later, Courtney died.

Harmon was questioned by police officers and gave two statements. In the first, he disclaimed any knowledge of the cause of the child's injuries. Two days later, he gave the second statement, in which he related that he was carrying Courtney on his shoulders when the child slipped and fell onto a protruding stick or root; that he cleaned the child, and then used a douche bottle to administer to him an enema. The police recovered two douche bottles from Harmon's residence.

At trial, the physician testified that the wound in the child's body was consistent with an injury that could result from the insertion of such a douche bottle. Talley testified she had never given Courtney an enema by means of a douche bottle, nor had she authorized Harmon to give the child an enema. She stated that Harmon previously had argued with her over the fact that Reese was not toilet-trained.

Harmon was indicted for murder and convicted of felony murder, the underlying felony being cruelty to children. He was sentenced to life imprisonment.[1]

1. The evidence is sufficient to permit a rational trier of fact to find Harmon guilty of felony murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. (a) Harmon contends that the trial court's admission into evidence of portions of his second statement was error because the state failed to give to him the required ten days' notice that the statement would be used at trial.[2] At a preliminary hearing, the police officer who took Harmon's second statement testified to portions of its content. Harmon had a transcript of the hearing. Following a *Jackson-Denno* hearing, the trial court ruled that only those portions of the second statement testified to during the preliminary hearing (and

---

[1] The crime occurred on July 1, 1988, and the victim died of the resulting injuries on July 3, 1988. Harmon was indicted on August 23, 1988. Following a jury trial, Harmon was found guilty on April 4, 1989. Harmon filed a notice of appeal on May 3, 1989. The court reporter certified the transcript on June 26, 1989. The case was docketed in this court on July 13, 1989. The case was submitted on briefs on August 25, 1989.

[2] OCGA § 17-7-210 (a) provides that a defendant is entitled, upon written request, to receive a copy of "any statement given by him while in police custody." Subsection (b) provides that the prosecution is required to "furnish, in writing, all relevant and material portions of the defendant's [oral] statement."

hence reflected in the transcript) might be admitted into evidence.

(b) In *White v. State*, 253 Ga. 106, 109 (2) (317 SE2d 196) (1984), we held:

> The purpose of the statute is to inform the defendant "in writing of all relevant and material portions of his own statement that the state may rely upon to his disadvantage." [Cits.] . . . [W]e find that the purpose of the statute was satisfied, as the appellant was clearly notified by the state of the substance of the statement the state anticipated using against him.

There was no error.

3. (a) Harmon contends that the trial court erred in refusing to instruct the jury concerning the crime of voluntary manslaughter as a lesser included offense. Following the charge, the trial court asked if there were any exceptions. Harmon objected to the court's refusal to give his requested instruction on involuntary manslaughter, but did not except to the refusal to charge on voluntary manslaughter, nor did he reserve the right to except.

(b) In *Pruitt v. State*, 258 Ga. 583, 590 (14) (373 SE2d 192) (1988), we held:

> If the trial court asks whether or not there are any objections to the charge, counsel must either state his objections or reserve his right to object on motion for new trial or on appeal. . . . Here, as to the state's requests to charge, defense counsel did neither, and the [contention] raised in [this] enumeration of error [has] not been preserved for appellate review.

There was no error.

4. (a) Harmon contends that the trial court erred in refusing to instruct the jury concerning the crime of involuntary manslaughter as a lesser included offense — specifically, the provisions of OCGA § 16-5-3 (b).[3] Harmon argues that the administration of an enema was a "lawful act," and that the "unlawful manner" was the way in which it was administered. The evidence establishes that Harmon inserted into the body of a 22 or 23 pound infant the tip of a douche bottle in such a manner as to cause a two-inch tear in the child's viscera.

(b) OCGA § 16-5-60 (b) defines reckless conduct as follows:

---

[3] OCGA § 16-5-3 (b) provides that a person commits involuntary manslaughter when he unintentionally causes the death of a person "in the commission of a lawful act in an unlawful manner. . . ."

A person who causes bodily harm to or endangers the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that his act or omission will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation is guilty of a misdemeanor.

Harmon's conduct, as related by him, comes so plainly within the definition of the crime of "reckless conduct" that it cannot qualify as a "lawful act."[4] The refusal to give the requested charge was not error.

*Judgment affirmed. All the Justices concur, except Bell, J., who dissents.*

DECIDED MARCH 1, 1990.

*Arthur A. Mendenhall, Jr.,* for appellant.

*Douglas C. Pullen, District Attorney, Lew S. Barrow, Assistant District Attorney, Michael J. Bowers, Attorney General, C. A. Benjamin Woolf,* for appellee.

---

[4] We have addressed circumstances relative to the defense of justification that bear logical connection to Harmon's contentions. In *Crawford v. State*, 245 Ga. 89, 94 (263 SE2d 131) (1980), we held:

Where a defendant uses a gun in self-defense in an "unlawful manner," he or she is guilty of a crime, reckless conduct, [OCGA § 16-5-60], and thus the act is not a "lawful act" within the meaning of [OCGA § 16-5-3 (b)].

See also *Saylors v. State*, 251 Ga. 735, 737 (309 SE2d 796) (1983), where we applied the holding of *Crawford* to defendants who seek to justify homicide as self-defense, whatever the implement of death.