## S94A0651. MOSES v. THE STATE.
(444 SE2d 767)

HUNSTEIN, Justice.

Daniel Curtis Moses was convicted of the malice murder by suffocation of his girl friend's infant son and sentenced to life imprisonment.[1] He appeals and we affirm.

Evidence adduced at appellant's trial revealed the following facts. On the morning of March 8, 1992, 17-month-old Justin Diaz was found by appellant in his crib, not breathing. He was taken by his mother, Jeanette Diaz, and neighbors to a hospital. When he arrived, unresuscitated, he was blue and had no heartbeat. Justin died later that day; an autopsy performed on March 10 concluded that Justin's death was caused by suffocation by the placement of something over the child's face firmly enough and for a period sufficient (two to three minutes) to prevent his breathing and to cause irreversible brain damage. The day following Justin's death, appellant, who had been alerted that police were trying to contact him, came to the police station and signed a statement wherein he recounted that he had been awakened early on March 8 by Justin's crying, had changed his diaper, and then returned him to his crib again. After smoking a cigarette in another room, he checked on the child and found him lying face down, limp and not breathing. Thereupon, he removed Justin from the crib, unsuccessfully attempted CPR and then roused Ms. Diaz and directed her to the neighbors' home to call 911. On March

---

[1] The crime was committed on March 8, 1992. Appellant was indicted by the Murray County grand jury on June 10, 1992. He was convicted on February 25, 1993 and sentenced on March 9, 1993. His motion for a new trial was filed March 19, 1993, amended on March 31, 1993 and denied on May 4, 1993. The notice of appeal was filed on May 26, 1993. After extensions of time for filing of the transcript, the appeal was docketed in this court and submitted for decision on briefs on January 31, 1994.

10, appellant and Ms. Diaz returned to the police station for Ms. Diaz to give a statement. Detective West, who testified both at the suppression hearing and at trial that he was unaware of appellant's March 9 statement, asked appellant's permission to photograph his residence. Appellant orally consented and rode with the detective and Sheriff Ensley to the house. En route, appellant signed a consent to search. According to Detective West, while at the house, appellant reiterated his first version of the events. Detective West commented that it did not "sound right," but appellant asserted that he would not kill his own son. Detective West responded that Justin was not appellant's son. Appellant then became emotionally distressed, squatted silently on the floor with his head in his hands and finally, in response to Detective West's repeated inquiry as to what happened, admitted that Justin began to cry after his diaper was changed and that to keep him from waking Ms. Diaz, appellant placed his hand over Justin's mouth and that Justin went limp. Appellant then said, "Justin, I'm sorry. I should burn in [H]ell for this. I deserve it."

1. Appellant contends that the trial court erred by admitting into evidence Detective West's testimony as to appellant's incriminating statements which, appellant contends, were made while in custody and prior to having been advised of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). It is undisputed that appellant was not advised of his *Miranda* rights until after he and Detective West returned to the police station following their visit to the house. However, appellant argues that he had been a suspect in Justin's death and was actually in custody during the visit to the house as a result of Detective West's discovery there of a marijuana plant just prior to appellant's admissions regarding Justin's injury. Both Detective West and appellant testified at the suppression hearing that upon discovery of the marijuana, appellant had asked the detective whether he was under arrest and Detective West responded that the marijuana matter would be handled later, after the funeral. Appellant was taken back to the police station immediately following his revised statements about Justin's injury and was there advised of his rights. On being informed that he was not free to leave, appellant requested a lawyer and no further questioning ensued.

> A person is not entitled to Miranda warnings as a matter of right, even though that person is a suspect, unless that person had been taken into custody or has been deprived of freedom of action in another significant way.

*Woods v. State*, 242 Ga. 277, 279-280 (2) (248 SE2d 612) (1978); see also *Minnesota·v. Murphy*, 465 U. S. 420, 433 (104 SC 1136, 79 LE2d 409) (1984). Appellant's subjective understanding of his situation, as

evidenced by his testimony at the suppression hearing that he did not feel entirely free to leave the house, notwithstanding Detective West's assurances regarding the marijuana discovery, is not tantamount to his having been placed in custody or otherwise deprived of his freedom in any significant way. *Hardeman v. State*, 252 Ga. 286, 288 (1) (313 SE2d 95) (1984). "Custodial arrest is said to convey to the suspect a message that he has no choice but to submit to the officers' will and to confess." *Minnesota v. Murphy*, supra at 433. The trial court concluded that no *Miranda* warnings were required prior to appellant's statements to Detective West at appellant's house because appellant was not in custody at the time. This finding was not clearly erroneous and thus we hold that there was no error in admitting the statements at trial. *Martin v. State*, 262 Ga. 312 (3) (418 SE2d 12) (1992).

2. The trial court charged the jury on felony involuntary manslaughter (OCGA § 16-5-3 (a)) and appellant contends that the trial court erred in refusing his request to also charge on misdemeanor involuntary manslaughter under OCGA § 16-5-3 (b). Appellant claims that Detective West's testimony is evidence supporting that charge, to-wit, that appellant committed a lawful act (placing his hand over Justin's nose and mouth) in an unlawful manner (long enough and hard enough to stop his breathing for two to three minutes). This court has recently held that where even the slightest evidence shows that the defendant may be guilty of a lesser included offense, then a requested charge on that offense must be given. *Edwards v. State*, 264 Ga. 131 (442 SE2d 444) (1994). However, our holding in *Edwards* does not obviate the necessity that the evidence actually warrant the requested charge. *State v. Alvarado*, 260 Ga. 563 (397 SE2d 550) (1990); see *Byrer v. State*, 260 Ga. 484, 486 (3) (397 SE2d 120) (1990). Appellant's conduct in placing his hand over Justin's nose and mouth so forcefully as to prevent his breathing for a period sufficient to result in irreversible brain damage "comes so plainly within the definition of the crime of 'reckless conduct' [OCGA § 16-5-60 (b)] that it cannot qualify as a 'lawful act.'" (Footnote omitted.) *Harmon v. State*, 259 Ga. 846, 849 (388 SE2d 689) (1990). Appellant's enumeration of error is accordingly without merit.

3. The evidence adduced at trial, when viewed in a light most favorable to the verdict, would authorize a rational trier of fact to find appellant guilty of malice murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. All the Justices concur, except Fletcher, J., who concurs in the judgment only.*

DECIDED JUNE 27, 1994.

*James E. Wilbanks,* for appellant.

*Jack O. Partain III, District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Paige M. Reese, Assistant Attorney General,* for appellee.