### S97A1797. MOSELY v. THE STATE.
(495 SE2d 9)

THOMPSON, Justice.

Samuel Joseph Mosely was convicted of the malice murder of his wife, Pamela Mosely.[1] On appeal, he asserts that the trial court erred in failing to strike two prospective jurors for cause, and he challenges the admissibility of his statements to the investigating officers. Finding no error, we affirm.

Mosely drove up to the emergency room of Stephens County Hospital with his wife slumped over in the passenger seat. She was pronounced dead on arrival from a shotgun wound to her head. Mosely had a superficial shotgun pellet wound to his lower left leg. He told a hospital attendant that he had stopped his car to render assistance to a man with a child whose vehicle was disabled at the side of the road; that the man reached into Mosely's car through the open

---

[1] The crime occurred on July 2, 1996. An indictment was returned on September 10, 1996, charging Mosely with malice murder. Trial commenced on December 2, 1996, and on December 3, 1996, a jury found Mosely guilty of malice murder. He was sentenced on the same day to life imprisonment. A motion for new trial was filed on December 31, 1996, and was denied on April 28, 1997. A notice of appeal was filed on May 23, 1997. The case was docketed in this Court on July 25, 1997, and was submitted for decision on briefs on September 15, 1997.

driver's side window and attempted to grab Pamela's purse; and that when Mosely resisted, the man fired a single shot through the driver's window, and ran away on foot. Mosely claimed that he drove directly to the hospital.

Shortly thereafter, Deputy Barnette arrived at the hospital to investigate the reported shooting. While Deputy Barnette was speaking with Mosely in the emergency room, Investigator Crozier arrived and tape-recorded the ongoing conversation. Both officers testified that at the time Mosely was considered a victim. Within 30 minutes, the Sheriff arrived at the hospital and Mosely was re-interviewed on tape. During this interview, Mosely agreed to the officers' request that he submit to hand wipings to test for gunshot residue. The officer explained at a suppression hearing that hand wipings are routinely taken when a shooting incident occurs involving two people. While awaiting delivery of the hand wiping kit, the officer asked Mosely if he owned any firearms. Mosely replied that he had four guns at home, including a small Derringer-type shotgun. Such a firearm was similar to the one Mosely had described as the murder weapon. At this point no *Miranda* warnings had been administered.

Later in the day, the medical examiner informed the officers of the results of the autopsy wherein it was determined that the murder weapon had been placed directly against the head of the victim when it was fired. It then became apparent that Mosely's description of the shooting was inconsistent with the forensic evidence.

The State's firearms examiner testified that shotgun wadding removed from the victim's body was from a Winchester 410. It was subsequently confirmed that Mosely had purchased a FMJ Model D 410 shotgun prior to the shooting. Based on shotgun patterns from a FMJ shotgun pistol, the firearms expert concluded that Mosely's leg wound could have been self-inflicted.

Pamela Mosely's son testified that while at the hospital on the morning of the shooting, Mosely instructed him to remove the firearms from the Mosely home, and admonished him not to speak to the police. Although a search of Mosely's home pursuant to a warrant produced a box of Winchester 410 shotgun shells, his shotgun was not found, and the murder weapon was never recovered.

Pamela Mosely's brother testified that the defendant telephoned him on four or five different occasions following Pamela's death, each time suggesting different circumstances and locations for the shooting. At various times, Mosely accused a physician at the hospital where Pamela had been employed; agents of the Department of Alcohol, Tobacco and Firearms; and members of the local school board. He also told others that he and his wife had been attacked in the driveway of their home by two strangers in camouflage clothing, and that the perpetrators had threatened to kill the Mosely children if

their identities were disclosed.

1. The evidence, although circumstantial, was sufficient to enable a rational trier of fact to find Mosely guilty beyond a reasonable doubt of malice murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Mosely asserts that the trial court erred in failing to strike two jurors for cause based on their familiarity with the defendant and the victim.

Both jurors stated that they knew the defendant and the victim — one juror attended the same church as the Moselys and had visited with the family at the funeral home; the other juror had hired Pamela Mosely as a nurse at Stephens County Hospital and also attended the same church. Although both jurors stated that they could be fair and impartial and reach a verdict based solely on the trial evidence, the court nevertheless granted defense counsel's request for sequestered voir dire of both prospective jurors.

Further inquiry established that the first juror served on a church deacon board along with the defendant. Some of Pamela's co-workers expressed their opinion to him at the funeral home concerning how the shooting occurred, but the juror maintained that he had not formed his own opinion about the case. And although he indicated a preference not to serve, he reiterated that he could be fair and impartial and reach a verdict based solely on the evidence. The trial court denied Mosely's motion to strike this juror for cause.

The second juror stated that she was Pamela Mosely's supervisor at Stephens County Hospital and that the two had a working relationship. She also taught the Mosely children in Sunday school. On occasion, Pamela discussed her family relationship with this juror, including the disclosure that she was sometimes unhappy with her marriage. The juror stated that any knowledge she had of the case was derived from "general discussion" among hospital personnel who were at work when Pamela Mosely was taken to the emergency room. She acknowledged that she had not formed an opinion about the case, and that she was "very open-minded and non-judgmental." The trial court denied a motion to excuse this juror for cause on the basis of the juror's statement that she could render a verdict based solely on the evidence.

The decision to strike a juror for cause lies within the sound discretion of the trial court. *Garland v. State*, 263 Ga. 495 (1) (435 SE2d 431) (1993). The challenger must show that a potential juror's opinion " 'is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence.' " Id. at 496.

Citing *Lively v. State*, 262 Ga. 510 (1) (421 SE2d 528) (1992), Mosely asserts that the court may not rely solely on the juror's own

assurances of impartiality, but must make additional factual findings where the record shows on its face compelling circumstances supporting disqualification. However, additional findings are not required in every case in which a motion to strike for cause is made. *Garland*, supra at 497. "Rather, the application of *Lively* comes into play where the record shows on its face circumstances indicating that a potential juror has a compelling interest or bias in the case." Id. The record in the present case demonstrates that both prospective jurors were able to put aside any relationship with the victim or the defendant and render impartial verdicts based solely on the evidence. Since we cannot conclude that either juror had such a "compelling bias or interest in the outcome of the case," id., as would require a factual determination under *Lively*, the trial court was entitled to rely on the jurors' responses in determining their qualifications to serve. Accord *Matthews v. State*, 268 Ga. 798 (493 SE2d 136) (1997); *Carr v. State*, 267 Ga. 547 (5) (480 SE2d 583) (1997). Accordingly, the trial court did not abuse its discretion in failing to remove either juror for cause.

3. Mosely asserts the trial court erred in admitting his emergency room statements into evidence because the interviews had been conducted prior to having been advised of his rights under *Miranda*.

"A defendant is not in custody and entitled to *Miranda* warnings when he is only being questioned by the police and is not a suspect in the case." *O'Donnell v. State*, 258 Ga. 782, 784 (4) (374 SE2d 729) (1989). Testimony from all three investigating officers at both the hearing on the motion to suppress and at trial support the court's conclusion that Mosely was merely being questioned as a victim and was not a suspect at the time of the hospital interviews. These findings are not clearly erroneous.

Nor was Mosely in police custody at the time. A determination of whether a person is in custody entails consideration of the circumstances surrounding the interrogation and, given those circumstances, whether a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave. *Hodges v. State*, 265 Ga. 870 (463 SE2d 16) (1995). Mosely's statements were given in the emergency room while he was receiving treatment for his leg wound. The officers were conducting a general investigation into the reported shooting and did not consider Mosely a suspect. A reasonable person in Mosely's circumstances would not conclude he was in custody or otherwise deprived of his freedom. Since he was not a suspect at the time and was not in custody, Mosely was not entitled to *Miranda* warnings. *Moses v. State*, 264 Ga. 313 (1) (444 SE2d 767) (1994); *Martin v. State*, 262 Ga. 312 (3) (418 SE2d 12) (1992); *O'Donnell*, supra; *Foshee v. State*, 256 Ga. 555 (5) (350 SE2d 416)

(1986); *Hardeman v. State*, 252 Ga. 286 (1) (313 SE2d 95) (1984).

4. The trial court did not err in refusing to strike certain testimony of the State's firearms expert elicited during cross-examination.

During his direct examination, the witness was shown a photograph of Mosely's leg wound. He testified that based on the photograph and shotgun patterns test fired from a FMJ shotgun pistol, he was of the opinion that one could hold a shotgun of that nature close enough to his own leg to cause a self-inflicted injury. On cross-examination, the witness was asked to explain his conclusion that the distance could have been less than 36 inches. He responded that his conclusion had been based on his tests and an examination of Mosely's pants. Mosely moved to strike the testimony concerning the distance of the weapon because it had been based in part on an examination of Mosely's clothing, which had been excluded from evidence pursuant to a pre-trial motion to suppress.

In denying the defense objection, the trial court concluded that the expert's opinion was predicated on photographs and shotgun test patterns which were properly in evidence. Additionally, the trial court recognized that it was defense counsel's own questions which elicited the objectionable information.

" 'Where counsel elicits testimony unfavorable to his client, he will not be heard to object to it, no matter how prejudicial it may be, if it is a direct and pertinent response to the question propounded.' " *Eiland v. State*, 246 Ga. 112, 117 (3) (268 SE2d 922) (1980). Even if we were to perceive the answer as non-responsive, we find no possible prejudice to the defendant. The blue jeans were depicted in the photograph which came in without objection, and any subsequent reference to Mosely's clothing was deliberately elicited by defense counsel.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 26, 1998.

*Kenneth D. Kondritzer*, for appellant.

*Michael H. Crawford, District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Angelica M. Woo, Assistant Attorney General,* for appellee.