## S97A1735. HARDIN v. THE STATE.
(494 SE2d 647)

SEARS, Justice.

Appellant Janice Hardin appeals her conviction and sentence for the murder of her husband, claiming that the trial court erred in admitting over objection certain statements in which she confessed to having participated in the killing.[1] At issue are three statements Hardin made to law enforcement officials in which she admitted having been involved in the murder. Regarding the first statement, we find that it was non-custodial, and thus was not subject to exclusion due to the officer's failure to advise Hardin of *Miranda* warnings before she made the statement. Regarding the second statement, we find that any error associated with its admission at trial was harmless, because it was cumulative of other evidence that was admitted properly at trial. Regarding the third statement, we find that it was

---

[1] The murder took place on October 25, 1993, and Hardin was indicted on November 23, 1993 for malice and felony murder, and possession of a firearm during the commission of a crime. A jury trial was held on September 28-30, 1994, and Hardin was found guilty on all counts. The conviction for felony murder was vacated by operation of law, and by order entered on September 30, 1994, the trial court sentenced Hardin to life imprisonment for the malice murder conviction and a consecutive five-year term for the firearms possession conviction. Hardin filed a motion for new trial on October 24, 1994, which was amended on March 14, 1997. The court reporter certified the trial transcript on January 11, 1995. The amended new trial motion was denied on May 21, 1997, and Hardin filed a timely notice of appeal in the trial court on June 18, 1997. The appeal was docketed in this Court on July 17, 1997, and submitted for decision without oral argument on September 8, 1997.

knowingly and voluntarily made after Hardin was advised of and waived her *Miranda* rights. Therefore, we affirm.

The evidence of record, construed most favorably to the jury's verdict, shows that Hardin and her lover, Donaldson, planned to kill Hardin's husband. One evening, Hardin unlocked the back door to the couple's home, and then left the home with her two children. While they were away, Donaldson entered the home through the unlocked back door, and shot Hardin's husband, killing him. He then joined Hardin and her children. After returning home, Hardin telephoned police to say that robbers had entered her house and had shot her husband.

The following day, Hardin voluntarily gave a statement at police headquarters, in which she described returning home the previous evening and discovering her husband's body. After police received a tip regarding the Hardin-Donaldson affair, Hardin admitted that she had not been wholly truthful with the police, and stated that she would contact the investigating officer later in order to tell him more. At 3:00 a.m. the following morning, Hardin telephoned the officer, and they arranged to meet at a nearby restaurant. During that meeting, Hardin admitted her involvement in the murder. The investigator asked Hardin if she would accompany him to his car, which was parked outside the restaurant, so that she could make a tape-recorded statement, and she agreed to do so. After repeating her confession in the investigator's car and allowing the officer to tape record the confession, Hardin left the restaurant on her own.

Later that same morning, Hardin was arrested and brought to the sheriff's office. She was advised of her *Miranda* rights, and waived those rights before giving an oral statement in which she confessed to her involvement in the murder. Initially, she refused to give a second tape-recorded statement and became upset because she believed that her young daughter had been brought to the sheriff's department against her wishes. After speaking alone for several minutes with the chief deputy sheriff, however, Hardin agreed to give a second recorded confession.

At trial, Hardin testified on her own behalf, and denied involvement in the murder. She claimed that she made her confession at the police station due to duress and in order to stop the police from questioning her young daughter.

1. The evidence introduced at trial was sufficient to enable a rational trier of fact to find Hardin guilty beyond a reasonable doubt of the crimes of which she was convicted.[2]

2. *Miranda* warnings are required only when one's freedom has

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

been restricted so as to render her in custody of the State.[3] However, the determination of whether one is in custody depends upon the objective circumstances attending the particular interrogation at issue, and not upon the subjective views of either the person being interrogated or the interrogating officer. Put another way, the relevant inquiry in determining whether one is in custody is how a reasonable person in the suspect's position would perceive his or her situation.[4] In determining whether *Miranda* warnings were required in a given situation, it is not relevant that investigators (1) might have focused their suspicions upon the person being questioned, or (2) have already decided that they will take the person into custody and charge them with an offense, so long as that individual is not in custody.[5]

(a) We do not believe that a reasonable person in Hardin's situation at the 3:00 a.m. restaurant meeting would consider herself to be in the custody of law enforcement officers. The evidence of record introduced at the *Jackson-Denno* hearing shows that Hardin herself initiated and asked for the meeting. She went to the restaurant to meet with the officer voluntarily and of her own volition. During the restaurant meeting, she voluntarily confessed her involvement in the murder. Under these circumstances, we do not believe that a reasonable person would have believed herself to be in custody, and not free to leave the scene of an interview if they so wished.[6] Consequently, the trial court did not err in admitting into evidence the statement made by Hardin to the officer while inside the restaurant, in which she admitted her involvement in the killing.

(b) Hardin argues that the trial court erred in admitting into evidence the tape-recorded statement made inside the officer's car at the restaurant meeting, because it was made in a custodial setting and she was not first advised of her *Miranda* rights. The State disagrees, and argues that the non-custodial nature attending the making of this statement is shown by the fact that after recording her statement, Hardin left the restaurant altogether and returned to her family.

Pretermitting whether, when she made the recorded statement

---

[3] *Stansbury v. California*, 511 U. S. 318 (114 SC 1526, 128 LE2d 293) (1994).

[4] *Hodges v. State*, 265 Ga. 870, 872-873 (463 SE2d 16) (1995); see *Berkemer v. McCarty*, 468 U. S. 420, 442 (104 SC 3138, 82 LE2d 317) (1984).

[5] *Stansbury*, supra; *Beckwith v. United States*, 425 U. S. 341, 347 (96 SC 1612, 48 LE2d 1) (1976); *Berkemer v. McCarty*, supra; *O'Donnell v. State*, 258 Ga. 782, 784 (374 SE2d 729) (1989).

[6] See *Vaughn v. State*, 261 Ga. 686, 687 (410 SE2d 108) (1991) (where suspect voluntarily accompanies police to police headquarters and gives a statement, later used against him, before leaving the police station of his own volition, the statement was non-custodial); *Ferrell v. State*, 261 Ga. 115 (410 SE2d 741) (1991); *Hardeman v. State*, 252 Ga. 286 (313 SE2d 95) (1984).

in the officer's car, Hardin's freedom had been restricted so as to render her in the custody of law enforcement officials, we conclude that any error associated with the admission of the statement at trial was harmless because it was cumulative of other evidence that was admitted properly.[7] The tape-recorded statement made inside the car recounted the same facts and admissions included in Hardin's earlier statement made to the officer while inside the restaurant, and Hardin's second recorded statement, made the following day at the sheriff's department. As discussed, supra, in Division 2 (a), and infra in Division 2 (c), both of these statements were admitted properly at trial. Consequently, this enumeration is rejected.[8]

(c) Hardin also claims that the trial court erred in admitting her third statement — the second *recorded* statement — made at the sheriff's office after her arrest. We first note that the statement's admission is presumptively valid because evidence introduced at the *Jackson-Denno* hearing showed that, before making the statement, Hardin was advised of her *Miranda* rights, stated that she understood those rights, and executed a waiver of rights form. Thereafter, Hardin did not invoke her right to have an attorney present during the interview.

As discussed above, Hardin initially stated that she would not give a recorded statement, and was upset because she believed that her daughter had been brought to the sheriff's office. After being left alone with the chief deputy sheriff, Hardin agreed to give a recorded statement. She claims on appeal that while alone with the chief deputy sheriff, she was threatened. At the *Jackson-Denno* hearing, a law enforcement officer testified that Hardin's children were not at the sheriff's office while she was being interrogated, but were left at a nearby hotel with another officer. Also at the *Jackson-Denno* hearing, the chief deputy sheriff testified that while alone with Hardin, he informed her that Donaldson had been arrested, and had given a statement incriminating her, and that officers would like for Hardin to give a statement of her account of the circumstances surrounding the murder. Based upon this testimony, at the conclusion of the *Jackson-Denno* hearing, the trial court ruled that the statement was admissible.

The trial court was entitled to weigh the credibility of witnesses testifying at the hearing, and to believe the more credible witness.[9] Moreover, this Court is bound by the trial court's findings unless they are clearly erroneous.[10] Having reviewed the transcript of the

---

[7] *McClendon v. State*, 259 Ga. 778, 780 (387 SE2d 133) (1990).

[8] Id.

[9] *Daniel v. State*, 268 Ga. 9 (485 SE2d 734) (1997).

[10] *Head v. State*, 262 Ga. 795, 797 (426 SE2d 547) (1993).

*Jackson-Denno* hearing, we determine that the trial court's factual findings are not clearly erroneous, and that the evidence supports the conclusion that Hardin's statement was knowingly and voluntarily made, and thus was properly admitted at trial.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 26, 1998.

*J. Patrick Claiborne,* for appellant.

*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Beth Attaway, Assistant Attorney General,* for appellee.