## S01A0835. PAUL v. THE STATE.
(555 SE2d 716)

BENHAM, Justice.

Appellant Demetrius Paul appeals the judgment of conviction entered against him for the malice murder of Jamario Marshall, the ten-year-old son of Paul's girlfriend.[1]

1. When the young victim arrived at a Clarke County hospital on February 12, 1998, he was in cardiac arrest and efforts to revive him proved unsuccessful. In an effort to determine what had caused the child's death, hospital personnel undressed him and found a massive area of hematoma and bleeding that extended from the child's lower back to the backs of his knees. The deputy chief medical examiner for the Georgia Bureau of Investigation's Crime Lab performed an autopsy and concluded that the child had died due to massive blunt force injuries to the buttocks and legs that resulted in fat emboliza-

---

[1] The victim died on February 12, 1998. In March 1998, the Clarke County grand jury returned a true bill of indictment charging appellant and the child's mother with malice murder and felony murder (cruelty to children), and the State filed notice of its intent to seek the death penalty for appellant. A new indictment charging only appellant with the crimes was returned on December 1, 1999, and appellant's trial commenced on February 21, 2000. The jury returned guilty verdicts on February 29, and fixed appellant's sentence at life imprisonment on March 1. Appellant's motion for new trial, filed March 22 and amended September 11, was denied November 22, 2000. A notice of appeal was timely filed on December 19, and the case was docketed in this Court on March 1, 2001. It was orally argued before the Court on May 14, 2001.

tion that caused death.[2] He testified that the child had been struck so many times (in excess of 100 times) that the individual blows could not be discerned on the child's body, and that an extraordinary amount of force had been applied to a small area, resulting in some denuding of superficial layers of skin and the saturation of the soft tissue with blood. Family members reported that appellant had beaten the child with a belt that afternoon to punish him for being suspended from school for stealing $5 from a classmate's desk.

In two statements to police on February 12, appellant admitted he repeatedly struck the child with a belt from which he had removed the buckle. Appellant told investigating officers that the naked child had lain face down across a bed and that the child's mother had held the child's feet and appellant had put his knee on the child's back to prevent the child from moving so that all blows would land on the buttocks and upper legs. He struck the child for 15-20 minutes until interrupted by the arrival of maintenance men and resumed the beating upon their departure. He again stopped 10-15 minutes later when police officers arrived in response to what they believed was a report of child sexual abuse. When the officers were shown the school suspension letter and were told that the adults were going to administer corporal punishment, one officer told appellant and the child's mother that the corporal punishment would be illegal if it left bruises.[3] When the police left, appellant resumed striking the child. Appellant attributed the child's complaints of dizziness and breathing difficulty to all the yelling the child had done while receiving the beating. The child dressed himself after appellant stopped hitting him, but had to use the wall to keep from falling when he attempted to walk. The child's mother, concerned that something was wrong, insisted they take the child to his grandmother, who had the child's medical insurance card, so that she could get care for him. Appellant and the child's mother helped the child to the car and delivered him to his grandmother's home where appellant and the grandmother's boyfriend carried the child into the house so that he could rest. The grandmother took him to the hospital, where he was pronounced dead approximately four hours after having left school with the notice of suspension. The evidence was sufficient to authorize a rational trier of fact to find appellant guilty of malice murder beyond

---

[2] The physician explained that fat embolization occurs when the subcutaneous fatty layer becomes emulsified due to massive blunt force and the fat droplets work their way into the open blood vessels, travel through the circulatory system, and clog the smallest capillaries, those in the lungs, causing death because the emulsified fat deposits in the capillaries prevent the blood from being oxygenated in the lungs. The chief deputy medical examiner testified that Jamario suffered an unusually severe fulminating form of the emboli in that his death occurred within hours of his injuries.

[3] The police did not see the child.

a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Parker v. State*, 270 Ga. 256 (1) (507 SE2d 744) (1998).

2. Appellant takes issue with the trial court's refusal to permit appellant to introduce during the guilt/innocence phase of the trial psychological evidence in order to negate specific intent, an essential element of malice murder. Appellant asserts he was not attempting to use the expert testimony to establish that appellant suffered from a mental infirmity amounting to insanity, delusional compulsion, or mental incompetence, and argues he was entitled to introduce expert evidence of his mental impairment[4] tending to show his lack of intent to kill. We rejected the identical argument in *Selman v. State*, 267 Ga. 198 (3) (475 SE2d 892) (1996), on the ground that the expert evidence was irrelevant to the state of mind necessary to determine guilt in light of the defendant's refusal to assert an insanity defense or that he was mentally ill at the time of the conduct in question. See also *Wallace v. State*, 248 Ga. 255, 262 (8) (282 SE2d 325) (1981), where this Court held that "[m]ental abnormality, unless it amounts to insanity, is not a defense to a crime."

3. In addition to the law of malice murder and felony murder, the trial court charged the jury on the law of involuntary manslaughter (death caused without intent by commission of an unlawful act other than a felony), with reckless conduct being the underlying unlawful act. OCGA § 16-5-3 (a). Appellant complains the trial court erred when it failed to give his requested jury instructions on misdemeanor involuntary manslaughter (death resulting from commission of lawful act in an unlawful manner) (OCGA § 16-5-3 (b)), and on voluntary manslaughter. If there is any evidence to support the giving of a written requested charge on an included offense, the trial court is required to give a charge on that offense. *Edwards v. State*, 264 Ga. 131 (442 SE2d 444) (1994).

(a) Appellant contends he was entitled to a jury instruction on misdemeanor involuntary manslaughter because his lawful act of disciplining the child victim became unlawful when it was done in an excessive manner. The conduct of a parent or one standing in loco parentis in administering the reasonable discipline of a minor is justified and is a defense to prosecution for any crime based on that conduct. OCGA § 16-3-20 (3). The legal argument set forth by appellant is similar to that of a homicide defendant who claims the act of killing the victim was justified as self-defense and, concerned that the amount of force used in self-defense might be seen as excessive, seeks

---

[4] The psychologist who examined appellant concluded that appellant "is prone to perceptual inaccuracies and distortions and his reality testing is poor . . . and he sometimes distorts reality."

to have the jury instructed on lawful act-unlawful manner involuntary manslaughter. This Court, however, has ruled that

> a defendant who seeks to justify homicide under the "self-defense" statute, OCGA § 16-3-21 is not entitled to an additional instruction on involuntary manslaughter in the course of a lawful act (OCGA § 16-5-3 (b)), whatever the implement of death. For if he is justified in killing under OCGA § 16-3-21, he is guilty of no crime at all. If he is not so justified, the homicide does not fall within the "lawful act" predicate of OCGA § 16-5-3 (b), for the jury, in rejecting his claim of justification, has of necessity determined thereby that the act is not lawful.

(Citations and emphasis omitted.) *Saylors v. State*, 251 Ga. 735, 737 (3) (309 SE2d 796) (1983). The same rationale applies to the homicide defendant who relies on the "parental reasonable discipline" justification defense — the defendant is not entitled to an additional instruction on involuntary manslaughter in the course of a lawful act because if the defendant is justified in administering reasonable parental discipline, the defendant is guilty of no crime; if the defendant is not entitled to rely on the reasonable discipline defense, the homicide does not fall within the "lawful act" predicate of OCGA § 16-5-3 (b) since, in rejecting the justification claim, the jury has determined that the act was not lawful. See *Ashford v. State*, 144 Ga. 832 (88 SE 205) (1916) (parental beating of a child that removed portions of skin, caused portions of skin to be beaten into a "jelly," and resulted in the child's death was an unlawful act); *Teal v. State*, 122 Ga. App. 532, 534 (177 SE2d 840) (1970) (whether the defendant's conduct was lawful at the outset, what took place thereafter (15 or more heavy blows) discloses felonious conduct not within the scope of involuntary manslaughter). See also *Moses v. State*, 264 Ga. 313 (2) (444 SE2d 767) (1994) (trial court correctly denied request for charge on lawful act-unlawful manner involuntary manslaughter since defendant's act in placing hand over infant's nose and mouth so forcefully as to prevent his breathing for a period of time sufficient to result in brain damage comes so plainly within the definition of the crime of reckless conduct that it cannot qualify as a lawful act); *Harmon v. State*, 259 Ga. 846 (4) (388 SE2d 689) (1990) (trial court correctly refused to give charge on lawful act-unlawful manner involuntary manslaughter since defendant's act of administering an enema to a 27-month-old toddler by inserting the tip of a douche bottle into the child's body so as to tear the child's viscera is reckless conduct and thus cannot qualify as a "lawful act"). Since appellant's act of repeatedly striking the child with a belt to the point that portions of

skin were removed, the subcutaneous layer of fat was emulsified, and the child had difficulty walking and breathing comes so plainly within the definitions of reckless conduct[5] that it cannot qualify as a lawful act, the trial court did not err when it declined to instruct the jury on lawful act-unlawful manner involuntary manslaughter. This Court's decision in *Arnett v. State*, 245 Ga. 470 (3) (265 SE2d 771) (1980), that the defendant was entitled to a charge on lawful act-unlawful manner involuntary manslaughter because "[t]he seriousness and manner of inflicting the blows on the victim was a question for the jury" is not applicable here since it involved a child who died from being slapped on his head with a hand and prodded in the stomach with a finger. Unlike the beatings inflicted in *Ashford*, *Teal*, and the case at bar, the *Arnett* conduct did not come so plainly within the definition of reckless conduct that it could not qualify as a lawful act.

(b) Voluntary manslaughter occurs when the death of another human being is caused, under circumstances which would otherwise be murder, by one acting "solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person. . . ." OCGA § 16-5-2 (a). Appellant maintains the victim's "backtalk" while he was being struck and his untruthful denial, while he was being struck, that he stole $5 from his classmate "might provoke a reasonable parent to continue with lawful corporal punishment to the point where it became excessive," and thus was evidence of provocation sufficient to authorize the giving of a charge on voluntary manslaughter.[6]

It is a question of law whether there is any evidence to support a finding that the defendant acted "solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person. . . ." OCGA § 16-5-2 (a). *Pace v. State*, 258 Ga. 225, 226 (2) (367 SE2d 803) (1988). Appellant relies solely on protestations made by the victim during the beating. However, " 'words alone, regardless of the degree of their insulting nature, will (not) in any case justify the excitement of passion so as to reduce the crime from murder to manslaughter, where the killing is done solely on account of the indignation aroused by use of opprobrious words.' [Cit.]" Id. Since words alone are not sufficient provocation, the trial court did not err when it declined to charge the

---

[5] Reckless conduct is defined in OCGA § 16-5-60 (b) as conduct of one that "causes bodily harm to or endangers the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that [the] act will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation. . . ."

[6] Appellant does not contend that the child's misbehavior at school constituted provocation that would reduce the act of murder to voluntary manslaughter. Instead, appellant sees the child's misbehavior as justifying the infliction of corporal punishment.

jury on voluntary manslaughter.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 28, 2001 —
RECONSIDERATION DENIED DECEMBER 14, 2001.

*Cook, Noell, Tolley, Bates & Michael, Edward D. Tolley, Ronald E. Houser,* for appellant.

*Kenneth E. Mauldin, District Attorney, Daniel F. Piar, Assistant District Attorney, Thurbert E. Baker, Attorney General, Madonna M. Heinemeyer, Assistant Attorney General,* for appellee.