## A05A0199. RAY v. THE STATE.
### (615 SE2d 812)

BARNES, Judge.

A jury convicted Jeremy Ray of four counts of armed robbery, one count of attempted armed robbery, two counts of burglary, and one firearms offense, and the trial court sentenced him to serve fifty years in confinement. Ray appeals, contending that the trial court erred in finding that his confession was voluntary; in finding that he consented to the search of his car and apartment; and in admitting irrelevant physical evidence. Ray also asserts that the evidence was insufficient and his armed robbery convictions should be dismissed because he was acquitted of related firearms charges. For the reasons that follow, we affirm the trial court's factual finding that Ray's confession was voluntary, and thus affirm the convictions.

1. Ray contends that the police interrogation that led to his confession violated his state and federal constitutional rights not to incriminate himself. He contends that the police should have read his *Miranda* rights to him earlier than they did, and that his statements should have been excluded from evidence at his trial because they were not voluntary.

In late 1997, two men committed a series of armed robberies in Statesboro and nearby towns. The robbers wore ski masks during all of these crimes, and none of the victims could describe the men with any particularity. Finally, during a beer and wine store robbery in Statesboro on New Year's Eve 1997, a victim lying face down on the floor took note of one of the robber's distinctive Nike tennis shoes. He described the red and black shoes to the investigating detective who passed out the information to other officers. Another detective spotted similar shoes on a man playing basketball in a Statesboro park the next day and stopped to talk to him. The officer obtained the man's name, Robert Wilson, and that of Ray, his companion, and took pictures of the shoes. The robbery victim looked at the pictures and confirmed that Wilson's shoes looked like the shoes of one of the robbers. Meanwhile, an officer followed the men to Ray's apartment and relayed the address to the detective investigating the beer and wine store robbery.

The detective went to Ray's apartment shortly afterward seeking to interview Wilson, but Wilson was gone. Ray said Wilson left suddenly to take a bus back home, so the detective went to the bus station looking for Wilson, but did not find him. The detective returned to the apartment. Ray was not home, but an officer located him driving around town at 8:30 p.m. and asked him to come to the police station to answer some questions. Ray voluntarily drove his car to the station and the detective began asking him about Wilson's involvement in multiple recent robberies. Ray was very nervous, began to cry, and said he knew what the detective wanted to hear but could not bring himself to tell him what he wanted to know. The detective testified that he began to suspect Ray at this time, but had no evidence against him to support an arrest and thus did not read the *Miranda* warnings to him.

Around 12:20 a.m., Ray consented to a search of his car and apartment. The police found a very small amount of marijuana in a bag beneath the driver's seat and a 9 mm shell casing in the driver's side door pocket. The detective did not arrest Ray because, as he said, he had the discretion to let him leave despite the marijuana, explaining, "It's been done before." Ray followed the detectives in his own car to his apartment and sat on the sofa while they searched it and found two ski masks behind an air conditioning unit in a utility closet. The detective then placed Ray under arrest and transported him back to the police station, where he read him his *Miranda* rights at about 3:30 a.m. The detective testified that he knew Ray was a senior at Georgia Southern, that Ray could read, write, and understand the process, and that he offered no hope of reward, coercion, or threats to force Ray to sign his *Miranda* waiver form or to continue speaking with him. The two continued to talk, Ray never asked for a lawyer, and from

5:18 a.m. to 6:12 a.m., Ray wrote out a three-page statement in which he fully confessed to participating in several robberies.

Ray testified at his *Jackson-Denno* hearing that he went to the police station voluntarily. He admitted that he lied to the detective about being at a party with Wilson during the beer and wine store robbery and about the date of Wilson's arrival to back up Wilson's alibi. He testified that when he said at some point during the interview that he was tired and hungry he was told to get used to it, and was also told he had to answer questions or he would be arrested for withholding evidence. Ray testified that he did not read the consent forms he signed, thinking they were search warrants that were already issued, and that the police told him that they would drop the charges if he told them what they wanted to hear. While he did not know if he "felt like [he] was under arrest," no one told him he could leave or that he could stop answering questions. When the State asked him why he wrote out the statement, he said he figured that since he had already told them about the crimes, he might as well write them down.

The trial court found that Ray's statement was made freely and voluntarily, and with knowledge of his rights, and that it was therefore admissible in evidence. "Unless clearly erroneous, a trial court's findings relating to the admissibility of an incriminating statement will be upheld on appeal. [Cit.]" (Punctuation omitted.) *Daniel v. State*, 268 Ga. 9, 10 (2) (485 SE2d 734) (1997).

> *Miranda* protections adhere when an individual is (1) formally arrested or (2) restrained to the degree associated with a formal arrest. (Cits.) Where an accused is neither in custody nor so restrained as to equate to a formal arrest, any statements made to an investigating officer are made under noncustodial circumstances and *Miranda* warnings are not required. [Cit.]

*Henley v. State*, 277 Ga. 818, 819 (2) (596 SE2d 578) (2004).

> Even if the police have probable cause to arrest at the time of the interview and secretly intend to charge the suspect at some future time, such facts are immaterial to a determination of whether the suspect was in custody at the time of the interview, except when and to what extent the police communicate their future intent to arrest during the course of the interview. *Miranda* warnings are not required simply because questioning takes place in a building containing jail cells. A suspect must be in a custodial situation for *Miranda* to apply; a suspect is not entitled to *Miranda* warnings, as a

matter of right, unless he has been taken into custody or has been deprived of freedom of action in another significant way.

(Citations and punctuation omitted.) *Hendrix v. State*, 230 Ga. App. 604, 605 (1) (497 SE2d 236) (1997).

In this case, Ray was not formally arrested or similarly restrained until after the police searched his apartment and found the two ski masks. He was then advised of his *Miranda* rights before he confessed to the crimes orally and then in writing. His statement is

presumptively valid because evidence introduced at the *Jackson-Denno* hearing showed that, before making the statement, [Ray] was advised of [his] *Miranda* rights, stated that [he] understood those rights, and executed a waiver of rights form. Thereafter, [Ray] did not invoke [his] right to have an attorney present during the interview.

*Hardin v. State*, 269 Ga. 1, 4 (2) (c) (494 SE2d 647) (1998). After reviewing the hearing transcript, we conclude that the trial court's findings are not clearly erroneous.

2. Ray argues that evidence of the shell casing and masks seized from his car and apartment should have been excluded because his consent to search was not voluntary. Unless clearly erroneous, the trial court's ruling on disputed facts and credibility at a suppression hearing must be accepted on appeal. *Martinez v. State*, 239 Ga. App. 662, 663 (522 SE2d 53) (1999). To justify its warrantless search, the State has the burden of proving that Ray gave his consent freely and voluntarily, and a valid consent eliminates the need for probable cause or a search warrant. *Dean v. State*, 250 Ga. 77, 79 (2) (a) (295 SE2d 306) (1982).

The voluntariness of a consent to search is determined by looking to the totality of the circumstances, including such factors as the age of the accused, his education, his intelligence, the length of detention, whether the accused was advised of his constitutional rights, the prolonged nature of questioning, the use of physical punishment, and the psychological impact of all these factors on the accused. In determining voluntariness, no single factor is controlling.

(Citations and punctuation omitted.) Id. at 80. Ray was a well-educated college senior, able to read, write, and understand the English language, and had driven himself to the police station for questioning. After he signed the consent forms giving the detective

permission to search his car and apartment, he followed the police to his apartment in his own car. Construing all of the factors as a whole, the trial court's ruling that appellant consented to the search and that the search was voluntary was not clearly erroneous.

3. Ray claims the State failed to prove his guilt beyond a reasonable doubt, contending that the only evidence against him was his own coerced, uncorroborated confession. While no Georgia cases require that the State corroborate a defendant's confession, relying on Deuteronomy 19:15, he notes that older authority requires it. "Thousands of years ago the rule of at least one civilization was that a 'single witness shall not suffice to convict a person of any crime or wrongdoing in connection with any offense that may be committed. Only on the evidence of two or three witnesses shall a charge be sustained.'"

We held in Division 1 that the trial court did not err in admitting Ray's confession into evidence. While Georgia law does not require that a confession be corroborated, we note that the testimony of the beer and wine store robbery victim and the investigating officer confirmed that Ray's companion, Wilson, wore distinctive Nike shoes that matched those of one of the armed robbers. We also note that numerous victims of the four robberies testified that the two armed robbers wore ski masks very similar to those found in Ray's apartment, dust-free masks found in an otherwise very dusty utility closet. Finally, a detective testified that a fast food employee had called to report that, while the Peking restaurant next door was being robbed (one of the robberies for which Ray was tried), someone in a small red car was parked in his lot, and that he thought there might be a connection. Officers stopped Ray's small red Hyundai two hours later based on this tip and obtained his name and address as well as that of his passenger, Wilson, then let them go. The Hyundai was the same car Ray was driving when he was stopped and asked to come to the police station for voluntary questioning.

We view the evidence on appeal in the light most favorable to the verdict, and no longer presume the defendant is innocent. We do not weigh the evidence or decide the witnesses' credibility, but only determine if the evidence is sufficient to sustain the convictions. *Taylor v. State*, 226 Ga. App. 254, 255 (485 SE2d 830) (1997). We construe the evidence and all reasonable inferences from the evidence most strongly in favor of the jury's verdict. *Sims v. State*, 226 Ga. App. 116 (1) (486 SE2d 365) (1997). We conclude that the evidence as outlined above was sufficient for a rational trier of fact to find Ray guilty beyond a reasonable doubt of the offenses charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

4. Ray asserts that the trial court erred in admitting the ski masks and bullet casing into evidence, arguing that the items "were

not positively shown to have any relevance to any of the charges against the defendant, or to have been involved in any crimes." To the contrary, the physical evidence was directly relevant, because all of the victims testified that the two armed robbers wore similar ski masks, and these masks were found behind the air conditioner in Ray's utility closet. The closet was very dusty, but the masks were dust-free, indicating that they had not been stored very long. Additionally, two victims at the Mellow Mushroom robbery testified that one of the robbers fired a weapon as the pair entered the restaurant, and a detective testified that he found a bullet jacket and fourteen lead fragments from a bullet in the Mellow Mushroom customer seating area, although laboratory tests identifying the type of bullet were not completed.

Any evidence is relevant that logically tends to prove or to disprove a material fact at issue in the case. *Owens v. State*, 248 Ga. 629, 630 (284 SE2d 408) (1981). The trial court has great discretion to determine relevancy and materiality of evidence, and admission is favored in doubtful cases. Id. We find no error here.

5. Ray last contends that the trial court should have vacated the attempted armed robbery verdict and three of the four armed robbery verdicts because the jury found him not guilty of the firearms offenses related to those four crimes, and thus those verdicts were mutually exclusive. As Georgia has abolished the inconsistent verdict rule, *Milam v. State*, 255 Ga. 560, 562 (2) (341 SE2d 216) (1986), only convictions of two offenses that are mutually exclusive are not sustainable. *Dumas v. State*, 266 Ga. 797, 800 (2) (471 SE2d 508) (1996). Although Ray claims he is arguing that the offenses are mutually exclusive, in fact he is arguing that the verdicts were inconsistent, and that a not guilty verdict on a count related to a guilty verdict renders the conviction void. The mutually exclusive doctrine, on the other hand, applies when a jury convicts someone of two mutually exclusive crimes, which is not the situation before us.

*Judgment affirmed. Ruffin, C. J., and Johnson, P. J., concur.*

DECIDED JUNE 15, 2005 — 

*James K. Kidd*, for appellant.

*Richard A. Mallard, District Attorney, Keith A. McIntyre, Assistant District Attorney*, for appellee.