## 41561. BRYANT v. THE STATE.
### (326 SE2d 746)

PER CURIAM.

Irene Bryant was convicted and sentenced to life imprisonment for the murder of her husband, by shooting and killing him with a handgun.

1. Mrs. Bryant testified that she heard a noise from the living room while she was resting in her bedroom; that she discovered her husband's body lying on the floor and heard an automobile driving away. Police investigators found a revolver in Mr. Bryant's left hand and discovered bullets later identified as having been fired from the revolver. No fingerprints could be taken from the weapon.

A friend of Mr. Bryant testified that Mr. Bryant had maintained a romantic attachment with another woman, and was afraid that Mrs. Bryant would kill him were she to discover the relationship; that Mr. Bryant also was afraid the other woman would harm him if he did not

divorce his wife; and that he was afraid he might do harm to himself if the situation continued unresolved. He testified that Mr. Bryant loved both Mrs. Bryant and the other woman; that he drank to excess; was extremely upset; and could not bring himself to confront the situation with his wife. The witness stated further that Mr. Bryant told him on the day before the homicide that he (Bryant) was going to tell Mrs. Bryant about the other woman, and that he (Bryant) did not know what was going to happen.

The person identified as the other woman testified that Bryant had been to her home on the night of the homicide, but only to deliver to her a household container.

Medical testimony identified three bullet wounds to the victim's body, which were inflicted by at least two bullets. The fatal wound was inflicted by a bullet fired through the chest, heart and lungs. Other wounds were discovered in the victim's left side and on his left arm. Gunshot residues around the wounds indicated that the shots were fired from close distances, and gunshot residues on Mr. Bryant's right (but not his left) hand were consistent with his having fired a shot with his right hand, or having placed his right hand in the vicinity of a muzzle blast at close range.

The autopsist testified that it was "highly unlikely" (although "conceivable") that Mr. Bryant had shot himself in the arm and side, based upon the entrance and exit positions of the wounds.

The evidence before the jury raised three possibilities as to the cause of death: suicide; homicide by Mrs. Bryant; or homicide by some unidentified third party (possibly the driver of the automobile which Mrs. Bryant testified she heard driving away).

It will be understood that the handgun was found in Mr. Bryant's left hand, and the gunshot residue was found only on his right hand. It is apparent from the record that, in order for the first possibility to have occurred, Mr. Bryant would have to shoot himself both in the chest, and by a single bullet in the left arm, grazing the lower arm and entering the left chest, or by two additional bullets — one grazing the arm, and another entering the chest. Thereafter, the handgun must have been shifted from the right hand (which had the residue upon it) to the left hand (which had no residue).

The second possibility relates to an unknown assailant, appearing in the record only by virtue of Mrs. Bryant's testimony on trial.

The third alternative is that Mrs. Bryant was the killer.

The evidence is sufficient to sustain the conviction. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Police Lt. Strength was qualified as an expert on self-inflicted bullet wounds over timely objection of the defense, and was permitted to give his opinion, without first stating the facts upon which it was based, that "there was positively no way that it [the wound] was self-

inflicted." Medical testimony had indicated that it was "highly unlikely" although "conceivable" that the wound could have been self-inflicted. Thus, Lt. Strength's testimony was the only positive evidence that the wound was not self-inflicted, and was undoubtedly damaging to the defense. Although formal education is not necessarily a prerequisite for qualification as an expert, *Jester v. State*, 250 Ga. 119 (296 SE2d 555) (1982), where, as here, the question to which an expert opinion responds can be answered only by a person having a specialized knowledge, mere exposure to a subject matter may not be sufficient to qualify the witness as an expert. The fact that Lt. Strength had observed more than a hundred fatal gunshot wounds did not, by itself, qualify him as an expert in determining whether or not gunshot wounds were self-inflicted. It was error to allow the opinion testimony of Lt. Strength.

3. The remaining enumeration is without merit.

*Judgment reversed. All the Justices concur, except Clarke, Smith, and Gregory, JJ., who dissent as to Division 1, and Marshall, P. J., Gregory and Weltner, JJ., who dissent as to Division 2.*

WELTNER, Justice, dissenting.

I dissent to Division 2 of the opinion, and to the judgment. The background of the police witness was certainly extensive enough to give to him a specialized knowledge far beyond that of the ordinary citizen. For that reason, I see no error in his qualification as an expert, or in the expression of his opinion as to the possibility of the wound being self-inflicted. *Brown v. State*, 245 Ga. 588, 589 (266 SE2d 198) (1980).

Moreover, the trial court gave the jury the usual instruction that the jury was not bound to accept the opinion testimony of any witness, but might, if it saw fit, disregard opinion testimony in its entirety.

I am authorized to state that Presiding Justice Marshall and Justice Gregory join in this dissent.

DECIDED MARCH 14, 1985 —
REHEARING DENIED MARCH 28, 1985.

*Richard E. Allen*, for appellant.
*Sam B. Sibley, Jr.*, District Attorney, *Michael J. Bowers*, Attorney General, *Dennis R. Dunn*, for appellee.