## 44714. TURNER v. THE STATE.
(365 SE2d 822)

BELL, Justice.

The appellant, Timothy Kevin Turner, was convicted of murder and another offense and was sentenced to serve two consecutive life terms of imprisonment. He appeals, and we affirm.[1]

The victim was a resident of Clark Drive, in Forsyth County, Georgia. Her boyfriend, Mark Jenkins, lived in a mobile home park a few miles from the victim's home. Jenkins spent most of Sunday, June 15, 1986, visiting the victim and her family. On that evening the victim drove Jenkins from her home to his residence and dropped him off. A few minutes later, one of the victim's neighbors heard a grinding noise from the direction of Clark Drive, and then heard two screams, followed by the sound of tires moving on Clark Drive, which was surfaced with gravel. She then saw headlights, and heard a female

---

[1] The offenses were alleged to have occurred on June 15, 1986. The indictment was filed on July 14, 1986, charging the defendant with kidnapping with bodily injury and malice murder. On October 24, 1986, the jury returned a verdict of guilty as to both counts, and on October 28 the court sentenced the defendant to serve two consecutive life terms. On November 26, 1986, the defendant moved for a new trial, which was denied December 19, 1986. He filed a notice of appeal to the Court of Appeals on January 20, 1987, and on March 5, 1987, filed an amended notice of appeal to this court. The court reporter certified the transcript on April 8, 1987, and on May 29, 1987, the record was docketed in this court. On July 10, 1987, the appellant submitted his appeal for decision without oral argument.

voice scream, "Help me." However, the neighbor did not investigate. The victim's car was found on Clark Drive the next morning. Inspection of the car revealed that some other car had collided with it. The victim's body was found in the late afternoon of Thursday, June 19, 1986, in a creek which runs through a public park in Roswell, Georgia. An autopsy revealed that the victim had died of blunt force trauma to the neck and chin, and had been dead approximately three days before being discovered.

Jenkins gave contradictory statements to the police before trial. In some of his statements he claimed that after being dropped off at his home by the victim he had started to worry that, due to a certain mechanical problem, the victim's car might break down as she was returning to her home. He had walked to a local convenience store to use a pay phone to call the victim's residence, but had met the defendant and asked him to give him a ride to follow the victim. The defendant agreed, and the two men drove in the direction of the victim's home. The visibility on the road leading to the victim's residence was poor because of dust in the air, and the defendant's car collided with the victim's car. The victim, Jenkins, and the defendant got out of the cars to inspect the damage, whereupon the defendant argued with the victim, struck her, and warned Jenkins not to interfere. Jenkins ran from the scene, and returned to his residence. In other statements (and in his trial testimony) Jenkins asserted that he had remained at his residence after having been dropped off by the victim, and denied having followed the victim or having witnessed the collision and its aftermath.

The defendant, a North Carolina resident, had lived as a child near the park where the victim's body was found. On the weekend of the victim's death he was visiting members of his family in the area where the victim lived. His sister lived in the same mobile home park as Jenkins. According to his brother, Phil Turner, the defendant had been drinking on the evening of June 15, and "was maybe high." On June 16, 1986, the defendant returned to North Carolina. Investigators later identified his car as the vehicle which had collided with the victim's car. The fibers of the seat fabric, interior carpet, and trunk liner of the defendant's car were consistent with numerous fibers which had been found on the victim. Hairs which had been found on the victim's panties were consistent with the appellant's hair and were inconsistent with Jenkins' hair. The defendant did not testify at his trial, but before trial he told an investigator that he had met the victim on Friday, June 13, at a store close to his sister's residence. The next time he had seen the victim was the evening of Sunday, June 15, at the same store. He said that she had ridden around with him, "and I did lay her back in the seat and kiss her, but no sex." He admitted having run into the rear of her car, but claimed that

"[s]omeone came up in a pickup truck and began arguing. She told me to leave, so I did." The defendant told another investigator that he had collided with the victim's car, and that he had helped Phil Turner, his brother, force her into the defendant's car because "he wanted what I also wanted." The defendant had driven from the site of the collision back to the convenience store, with Phil Turner and the victim in the back seat. At the store Phil Turner and the victim got out of the defendant's car and started walking toward Phil Turner's truck. Phil Turner had pulled his belt off as he walked, and the defendant assumed he was going to tie the victim's hands with it. The defendant immediately left the store. The victim was alive the last time he saw her, but, he said, "I cannot believe that [she] was not sexually abused." However, the defendant then admitted that this story was a lie.

At trial the defense counsel unsuccessfully attempted to convince the jury that some person other than his client was the murderer. To that end, he attempted to show that the victim's body had been placed in the creek only a relatively short time before it was discovered on Thursday, June 19. Several defense witnesses who lived in the neighborhood of the park testified that they had been to the creek on Monday, Tuesday, and Wednesday, but had not seen the body there. They further testified that they had seen a black pickup truck enter the park on early Thursday morning with some large object in the back and leave the park shortly thereafter. Also in evidence was the fact that a resident of the mobile home park in which Jenkins lived owned a black pickup which Jenkins had driven on one occasion before the murder. However, the defendant's theory was countered by certain evidence for the state: There was autopsy testimony that the body had been in the position in which it was found at least a day and a half, and a witness testified that he smelled the strong odor of a decomposing body when he visited the park on Wednesday, June 18. Moreover, the owner of the pickup truck testified that no one else had used her truck during the period in question.

1. The appellant enumerates as error the trial court's denial of his motion for a directed verdict. However, after carefully reviewing the entire record, we find that the evidence was sufficient for a rational trier of fact to have found beyond a reasonable doubt that the appellant was guilty of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Scully v. State*, 256 Ga. 683 (1) (353 SE2d 29) (1987).

2. The appellant contends that the superior court erred in granting the prosecution a continuance, but we find no abuse of discretion. "A motion for continuance is addressed to the sound discretion of the trial court, OCGA § 17-8-22, and this court will not interfere unless it is clearly shown that the court abused its discretion." *O'Neal v. State*,

254 Ga. 1, 2 (2) (325 SE2d 759) (1985). Accord *Frazier v. State*, 257 Ga. 690, 695-696 (12) (362 SE2d 351) (1987).

3. During the trial the defendant called as a defense witness a sheriff's deputy who had previously attended a homicide investigation seminar in which one of the subjects taught was the psychological profiling of monomaniac killers. Counsel for the defendant attempted to have the witness describe the elements of that profile, but the court disallowed the profferred testimony. On appeal the defendant contends that the court's ruling was error, but we find that this contention has no merit. "Acceptance or rejection of the qualifications of a proffered expert witness is within the sound discretion of the trial judge and will not be disturbed on appeal absent manifest abuse." *Jester v. State*, 250 Ga. 119 (1) (296 SE2d 555) (1982). See *Bryant v. State*, 254 Ga. 203 (2) (326 SE2d 746) (1985).

4. The appellant asserts that the district attorney was allowed to impermissibly comment on his failure to testify. For the following reasons, we disagree.

One of the defense witnesses was a private investigator who had assisted official investigators in interviewing Jenkins on June 26, 1986. As part of his testimony the private investigator summarized the interrogators' conversations with Jenkins and described the circumstances under which the interview took place. The witness testified that Jenkins' behavior during the interview had been "totally erratic" and that his stories had "changed constantly."

On cross-examination the prosecutor asked him, "Did you ever have occasion to talk to the defendant in this case, Tim Turner?" The witness answered that he had not, and the prosecutor then asked him whether he had ever been "requested by the defense to talk to Tim Turner?" The witness again answered negatively.

After the prosecutor finished cross-examining the witness, the defense counsel asked the witness whether he had "sufficient time with Mark Jenkins?" The witness said he had not. Counsel asked him, "Would you like to have some more?" The witness said yes, to which counsel responded by asking, "For what purpose?" The witness answered, "To get to the truth."

On recross-examination the court permitted the prosecutor to ask, over the defendant's objection, the following question: "In your search for the truth of the case, specifically with regard to questioning Mark Jenkins, would it have been helpful to you to have had the benefit of having talked to the defendant, Tim Turner?" The witness answered in the affirmative, and the prosecutor then asked him, "Did you have that opportunity," to which the witness responded in the negative.

"In *Ranger v. State*, 249 Ga. 315 (290 SE2d 63) (1982), we applied the two-prong test set forth in *United States v. Rochan,* 563

F2d 1246 (5th Cir. 1977). Under the test, reversal for improper prosecutorial conduct requires a finding that (1) 'the prosecutor's manifest intention was to comment upon the accused's failure to testify' or (2) the comment was 'of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.' *Ranger*, supra at 319." *Lowe v. State*, 253 Ga. 308, 309-310 (1) (319 SE2d 834) (1984). Accord *Lobdell v. State*, 256 Ga. 769, 774-775 (10) (353 SE2d 799) (1987).

We find no reversible error under the circumstances of this case. Nonetheless, we disapprove of this line of inquiry, as it approaches forbidden comment upon a defendant's right to remain silent.

5. The appellant's final enumeration is that the court erred in allowing the state to introduce a certain videotape into evidence. The appellant asserts that the tape did not rebut any matter raised by the defense and that the tape was merely cumulative. We find no error. "The court did not abuse its discretion in controlling the scope of rebuttal testimony. *Smith v. State*, 126 Ga. 803 (3) (55 SE 1024) (1906)." *Ware v. State*, 252 Ga. 90, 91 (5) (310 SE2d 908) (1984).

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 17, 1988.

*Findley & Jackson, Martin B. Findley,* for appellant.

*Rafe Banks III, District Attorney, Michael J. Bowers, Attorney General, Eddie Snelling, Jr., Assistant Attorney General,* for appellee.