S03A0737. MARSHALL v. THE STATE.
(583 SE2d 884)

HUNSTEIN, Justice.

Vernessa Marshall was found guilty but mentally retarded in the felony murder and involuntary manslaughter of her ten year old son, Jamario, and sentenced to life in prison.[1] She appeals from her con-

---

[1] The crimes occurred on February 12, 1998. Marshall was indicted by a Clarke County grand jury on March 11, 1998 for malice murder and felony murder with cruelty to children

viction and we affirm.

1. The evidence adduced at trial demonstrates that the victim was suspended from school for stealing five dollars from another student. His grandmother, who was his legal custodian, took him to Marshall's house and told Marshall he should be spanked. Marshall and her boyfriend, Demetrius Paul, took turns whipping the child with a belt. Marshall beat the child first, until her arm gave out, then held the child down on the bed while Paul beat him. The beating was suspended when maintenance men arrived to make a repair in the apartment. Marshall and Paul told the men they were spanking their son for being sent home from school. At some point before the maintenance men arrived, an upstairs neighbor heard the beating and the child crying for it to stop and called police to report suspected abuse. Police arrived in response to the neighbor's call and questioned Marshall and Paul. Marshall told the officers they were arguing with the victim because he had been suspended. Paul held up the belt and said "We're through talking now." Police informed Paul and Marshall they could use corporal punishment but not to the extent it caused abuse, bodily injury, or bruises. Marshall and Paul then beat the victim for up to another hour, carried him to their car because he was unable to walk on his own and was having difficulty breathing, and returned him to his grandmother's house. Marshall told her mother something was wrong with the child and that they needed to take him to the hospital. The victim was pronounced dead shortly after arriving at the hospital.

In order to determine a cause of death, hospital personnel undressed the victim and discovered a large hematoma and bleeding from his lower back to the backs of his knees. His pants and underclothes were so soiled with blood and fluid they had to be peeled off of him. The medical examiner found that the cause of death was severe blunt-force injuries resulting in a massive hemorrhage and disruption of fat. Although individual blows could not be determined because the numerous blows overlapped and had scraped away layers of the victim's skin, the medical examiner testified that he was struck at least 100 times and with such force that the fat beneath his skin was emulsified, entered broken capillaries, and clogged the vessels leading to his lungs, a process called fat embolization.

The evidence adduced was sufficient to authorize a rational trier

---

as the underlying felony. After a trial held on September 14-22, 1999, Marshall was found guilty but mentally retarded of felony murder and involuntary manslaughter as a lesser included offense of malice murder and sentenced to life imprisonment. She filed a motion for new trial on September 28, 1999, and amended the motion on September 29, 2000. The trial court denied that motion on January 11, 2002. Marshall filed her notice of appeal on February 8, 2002, and the appeal was docketed in this Court on February 3, 2003. The case was orally argued on May 12, 2003.

of fact to find beyond a reasonable doubt that Marshall was guilty of the crimes charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In several enumerations of error, Marshall contends the trial court erred in allowing witnesses to give improper opinion testimony.

(a) During trial, the State called as a witness one of the officers who responded to the neighbor's report of suspected abuse. The officer testified that after speaking with Marshall and Paul he did not complete a report because in his estimation the call was unfounded. On cross-examination, Marshall extensively questioned the officer about his belief that the call was unfounded and his original decision not to write a report. The State then asked the officer on re-direct whether he would have considered the report to be unfounded if he had seen the victim's injuries. The officer said, "No," and that he "would have made an arrest or two." Marshall contends that the officer's statements are expressions of opinion on the ultimate issue of fact in the case. We disagree. The officer's testimony explaining his decision not to write a report and indicating what he would have done if he had seen the child's injuries was elicited in rebuttal to Marshall's extensive questioning of the officer on this subject. We find no abuse of the trial court's discretion in controlling the scope of rebuttal testimony. *Turner v. State*, 258 Ga. 97 (5) (365 SE2d 822) (1988). Moreover, we find the challenged testimony was not relevant to and did not invade the province of the jury on the ultimate issue in the case. See *Hamilton v. State*, 205 Ga. App. 422 (2) (422 SE2d 263) (1992).

(b) During trial, the emergency room physician who examined the victim testified that in his opinion this case involved unnecessary punishment of a child. Even assuming the admission of such testimony was error, considering the weight of the evidence we find it highly probable that the testimony did not contribute to the verdict. See *Remine v. State*, 203 Ga. App. 30 (2) (416 SE2d 326) (1992).

(c) Marshall contends the trial court erred in overruling her objection to testimony by a detective that in his opinion co-defendant Paul's statement to police was inconsistent with what he saw from the photographs of the victim's injuries. We find no reversible error. Although the determination of a witness' credibility is within the province of the jury, OCGA § 24-9-80, in light of the overwhelming evidence we find it highly probable that the detective's comment did not contribute to the verdict in this case. Compare *Griffin v. State*, 267 Ga. 586 (2) (481 SE2d 223) (1997) (State's repeated questions pertaining to defendant's credibility ruled improper).

3. The trial court did not abuse its discretion in refusing to admit into evidence a 1980 psychological evaluation of Marshall conducted by a school psychologist who was unavailable to testify at trial. The

trial court admitted psychological evaluations conducted in 1977 and 1983 that Marshall offered for the purpose of proving her mental retardation before the age of 18. Because all three reports reached similar conclusions and there was no evidence that the 1980 evaluation was more probative of her mental retardation than those admitted into evidence, we find no error. See *Morrow v. State*, 272 Ga. 691 (9) (532 SE2d 78) (2000) (use of hearsay evidence "necessary" under necessity exception if it is more probative on a material fact than other evidence procured and offered at trial).

4. Marshall enumerates as error the admission into evidence of four post-autopsy photographs of the victim's injuries. Post-autopsy photographs are admissible in evidence if necessary to show some material fact that becomes apparent only due to the autopsy. *Peterson v. State*, 274 Ga. 165 (5) (549 SE2d 387) (2001). Here, the post-autopsy photographs were offered to establish the nature and extent of the victim's injuries, which, the medical examiner testified, were impossible to convey using only external body pictures. Although Marshall contends the photographs were gruesome and unnecessary, two of the photographs showed the difference between normal fat tissue and the victim's hemorrhaged and contused fat tissue. Others showed abrasions on the victim's back and an area of normal tissue and the victim's back, buttocks, and legs in order to show his internal injuries in their entirety. Because these photographs were necessary to establish the nature and extent of the victim's injuries, the trial court did not abuse its discretion in admitting the photographs.

5. During closing statements, the State made an argument to the jury concerning the special relationship between a mother and child. Marshall contends the statements constituted an impermissible "golden rule" argument. Because the State's argument did not ask jurors to place themselves in the victim's position, it was not a "golden rule" argument and the trial court did not abuse its discretion in overruling Marshall's objection. See *McClain v. State*, 267 Ga. 378 (3) (a) (477 SE2d 814) (1996).

6. Marshall also contends the trial court erred in refusing to give several requested jury instructions. We disagree.

(a) It was not error for the trial court to refuse to charge the jury on reasonable parental discipline. A trial court must charge the jury on a defendant's sole defense, even in the absence of a written request, if there is some evidence to support the charge. *Tarvestad v. State*, 261 Ga. 605, 606 (409 SE2d 513) (1991). OCGA § 16-3-20 (3) provides a justification defense to a parent or person in loco parentis who reasonably disciplines his or her minor child. Although we recognize that what is reasonable discipline may depend, inter alia, upon the age and physical condition of the child, under no circumstances could the beating of the victim and the severity of the injuries

inflicted upon the victim in this case be determined to be reasonable parental discipline. See *Bearden v. State*, 163 Ga. App. 434 (1) (294 SE2d 667) (1982); *Ellis v. State*, 137 Ga. App. 834 (5) (224 SE2d 799) (1976).

(b) The trial court refused to charge the jury on involuntary manslaughter based on reckless conduct or battery as a lesser included offense to the charge of felony murder predicated on cruelty to children. By Marshall's own statements, she intentionally hit the victim with a belt and, after her arm grew tired, held the victim down while Paul continued the severe beating that resulted in the victim's death. Thus, it was undisputed that the beating was intentional, and the evidence established the completion of the greater offense of cruelty to children. "When the evidence shows completion only of the greater offense, it is unnecessary for the trial court to charge on the lesser offense. [Cit.]" *Jenkins v. State*, 270 Ga. 607, 608 (2) (c) (512 SE2d 269) (1999). There was no error in refusing to charge on involuntary manslaughter. Id. at 608 (2) (d).

(c) The trial court charged the jury on the law of malice murder, felony murder, and involuntary manslaughter predicated on battery as a lesser included offense to malice murder. The court refused, however, to give Marshall's requested instruction on misdemeanor involuntary manslaughter, see OCGA § 16-5-3 (b) (death resulting from commission of a lawful act in an unlawful manner), and Marshall enumerates the refusal as error. This same enumeration was raised and rejected in *Paul v. State*, 274 Ga. 601, 604 (3) (a) (555 SE2d 716) (2001), the appeal involving Marshall's co-defendant, in which we held that "[s]ince appellant's act of repeatedly striking the child with a belt to the point that portions of skin were removed, the subcutaneous layer of fat was emulsified, and the child had difficulty walking and breathing comes so plainly within the definitions of reckless conduct that it cannot qualify as a lawful act, the trial court did not err when it declined to instruct the jury on lawful act-unlawful manner involuntary manslaughter." (Footnote omitted.) Id. at 604-605. For the same reason, we hold it was not error for the trial court to refuse to give the misdemeanor involuntary manslaughter charge in this case.

*Judgment affirmed. All the Justices concur.*

BENHAM, Justice, concurring.

While I agree with everything in the main opinion, I write separately to highlight the public's role in helping ensure complete justice for all our citizens.

This murder case involves a ten-year-old child who was beaten so severely from his back to his knees over an extended period of time that, according to the autopsy report, the fat beneath his skin was

emulsified, entered broken capillaries, and clogged the vessels leading to his lungs, which resulted in his death.

This beating did not take place out of the presence of other adults. While the beating was taking place, two service men visited the home to make repairs and one of the perpetrator's many neighbors called the police. When the police arrived, they made casual inquiries but took no corrective or preventive actions. All too often we see cases in our court system where ordinary citizens have had many opportunities to report crimes or take preventive or corrective measures, yet they have failed to do so. Such failure to report crimes happens with alarming regularity in child abuse and domestic violence cases.

Many, but not all, of the child and domestic violence incidents end up in the legal system where we can only impose time, fines, or probation. Oftentimes, we in the judicial system can do little to help the victims of violence. But cases of this nature highlight the need for ordinary citizens to do more to prevent crimes and protect victims: they can cooperate with police; they can report suspected crimes; they can organize neighborhood watch programs; they can serve as witnesses during investigations; they can serve on juries; they can support the creation of drug courts; and they can participate on commissions and committees designed to address public safety issues. If citizens do more on the preventive side, the courts can be more effective on the punishment and rehabilitation side.

DECIDED JULY 16, 2003 —
RECONSIDERATION DENIED JULY 29, 2003.

*Russell C. Gabriel*, for appellant.

*Kenneth W. Mauldin, District Attorney, Brian V. Patterson, Assistant District Attorney, Thurbert E. Baker, Attorney General, Jennifer S. Gill, Assistant Attorney General*, for appellee.