JORDAN, Circuit Judge, concurring in part and dissenting in part:
"[B]urdens of proof can be outcome-determinative in the face of ignorance[.]"*
The Eighth Amendment prohibits a state from executing a defendant who is intellectually disabled. See Atkins v. Virginia , 536 U.S. 304, 321, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). In my view, the Georgia statute requiring capital defendants to prove intellectual disability beyond a reasonable doubt, see O.C.G.A. § 17-7-131(c)(3), violates the Due Process Clause of the Fourteenth Amendment. That burden of proof creates an intolerable risk that intellectually disabled defendants will be put to death. Indeed, in the last 30 years not a single capital defendant in Georgia has been able to establish intellectual disability when the matter has been disputed. With respect, I dissent from the majority's contrary holding.[1]
I
Where a criminal proceeding does not implicate an underlying constitutional right, the Due Process Clause generally allows a state to decide the appropriate allocation and burden of proof. Take, for example, the affirmative defense of insanity. When a defendant invokes insanity as a *1010 defense to criminal liability, a state may require him to prove that he was insane beyond a reasonable doubt. See Leland v. Oregon , 343 U.S. 790, 799-800, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952). But that is because insanity is not a defense born of the Constitution. Indeed, the Supreme Court has never held that the Constitution requires states "to recognize the insanity defense." Medina v. California , 505 U.S. 437, 449, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992). See also Alex Stein, Constitutional Evidence Law , 61 Vand. L. Rev. 65, 80 (2008) ("Because states and Congress may choose not to recognize [certain affirmative] defenses, they are allowed to condition the availability of any such defense on its proof by the defendant. Consequently, lawmakers can require defendants to establish any affirmative defense by preponderance of the evidence, by clear and convincing proof, or even beyond a reasonable doubt.").
Constitutionally-based rights stand on a different footing. Competency, for example, provides a good contrast to the affirmative defense of insanity. A state cannot constitutionally try and convict a defendant who is incompetent. See, e.g. , Drope v. Missouri , 420 U.S. 162, 171-72, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975) ; Pate v. Robinson , 383 U.S. 375, 378, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). Accordingly, the Supreme Court has held that although a state can require a defendant to prove lack of competency by preponderance of the evidence, it cannot, based on "traditional and modern practice and the importance of the constitutional interest at stake," demand clear and convincing evidence. Compare Medina , 505 U.S. at 453, 112 S.Ct. 2572 (allowing the use of the preponderance-of-the-evidence standard), with Cooper v. Oklahoma , 517 U.S. 348, 356, 369, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996) (prohibiting the use of the clear-and-convincing standard).
Intellectual disability, as noted, presents a constitutionally-based restriction on a state's ability to carry out the death penalty. See Atkins , 536 U.S. at 321, 122 S.Ct. 2242. Georgia's placing of a beyond-a-reasonable-doubt burden on capital defendants asserting intellectual disability therefore violates the Due Process Clause, and the decisions of the state superior court and the Georgia Supreme Court holding otherwise are contrary to Cooper , which constitutes clearly established Supreme Court precedent. See 28 U.S.C. § 2254(d)(1).
A
In Hill v. Humphrey , 662 F.3d 1335, 1338 (11th Cir. 2011) (en banc), a habeas corpus case decided under the deferential AEDPA framework, we held by a 7-4 vote that a Georgia Supreme Court decision upholding § 17-7-131(c)(3)'s beyond-a-reasonable-doubt standard against an Eighth Amendment challenge was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Hill is not controlling here because Mr. Raulerson is challenging the beyond-a-reasonable-doubt standard under the Due Process Clause, and not the Eighth Amendment. See id . at 1363-64 (Tjoflat, J., concurring in the judgment) (explaining that the petitioner in Hill should have, but did not, assert a due process claim).
Prior to our decision in Hill , the Georgia Supreme Court held, by a 4-3 vote, in Head v. Hill , 277 Ga. 255, 587 S.E.2d 613, 620-22 (2003), that Georgia's beyond-a-reasonable-doubt standard did not violate the Due Process Clause. In this case, the state superior court relied on the opinion in Head to reject Mr. Raulerson's due process claim. See R31-423.
In Head , the Georgia Supreme Court identified *1011 Leland , 343 U.S. at 799-800, 72 S.Ct. 1002 (concerning the non-constitutional affirmative defense of insanity), as the governing Supreme Court precedent, and expressly declined to apply the standard set forth in Cooper , 517 U.S. at 356, 369, 116 S.Ct. 1373 (concerning the constitutional matter of competency). See Head , 587 S.E.2d at 621 ("[W]e again find the comparison between claims of insanity and of mental retardation to warrant a conclusion that the beyond-a-reasonable-doubt standard may be applied constitutionally to mental retardation claims."). This ruling, followed by the state superior court here, is "contrary to" established Supreme Court precedent-i.e., Cooper -under § 2254(d)(1) and is therefore not entitled to AEDPA deference.
A state court decision comes within the "contrary to" clause of § 2254(d)(1) if it applies a "rule that contradicts the governing law set forth in [Supreme Court] cases." Williams v. Taylor , 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). See also id. at 406, 120 S.Ct. 1495 (explaining that if a state court, in a case involving a claim of ineffective assistance of counsel, applies a standard different than the one set forth in Strickland v. Washington , 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the "contrary to" standard is satisfied); id. at 397-98, 120 S.Ct. 1495 (holding that a state court's decision was "contrary to" clearly established precedent because it did not correctly apply the prejudice standard of Strickland ). If, on the other hand, a state court correctly identifies the governing Supreme Court cases in the relevant area of law and applies the standard from those cases, its decision will not be "contrary to" clearly established Supreme Court law. See Bell v. Cone , 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). The Supreme Court has consistently confirmed this interpretation of the "contrary to" clause, and so have we. See White v. Woodall , 572 U.S. 415, 420, 134 S.Ct. 1697, 188 L.Ed.2d 698 (2014) ; Lafler v. Cooper , 566 U.S. 156, 173, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012) ; Trepal v. Sec'y, Fla. Dep't of Corr. , 684 F.3d 1088, 1109 (11th Cir. 2012). Accord Randy Hertz & James S. Liebman, Federal Habeas Corpus Practice and Procedure § 32.3 at 1908-10 (7th ed. 2018).
Contrary to what Head concluded, Leland is not the governing Supreme Court precedent for addressing the limits on determining and allocating the burden of proof when a constitutional right is at stake. Insanity, the affirmative defense at issue in Leland , is not and has never been constitutionally based. See Medina , 505 U.S. at 449, 112 S.Ct. 2572. So the deference given to the states in Leland to determine and allocate the burden of proof for an insanity defense to criminal liability is not appropriate in a case involving a constitutionally-protected right. Indeed, the Supreme Court noted in Leland that the defendant there did not "s[eek] to enforce against the states a right which we have held to be secured to defendants in federal courts by the Bill of Rights." Leland , 343 U.S. at 798, 72 S.Ct. 1002. See also Hill , 662 F.3d at 1383 (Martin, J., dissenting) ("There is a critical distinction between the Due Process required to protect substantive rights derived from the United States Constitution on the one hand [in Cooper ] and state created rights on the other [in Leland .]") (citation omitted).
Where a fundamental constitutional right is involved-and the Eighth Amendment right of an intellectually-disabled defendant not to be executed is such a right-Cooper provides the governing precedent under the Due Process Clause. The Supreme Court in Cooper in fact distinguished cases, like Patterson v. New York , 432 U.S. 197, 201-02, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), involving the determination and allocation of the burden of *1012 proof for state-created defenses. See Cooper , 517 U.S. at 367-68, 116 S.Ct. 1373 ("[U]nlike Patterson , which concerned procedures for proving a statutory defense [i.e., extreme emotional disturbance], we consider here whether a State's procedures for guaranteeing a fundamental constitutional right are sufficiently protective of that right.").
To answer the due process question presented here, Cooper requires a court to examine the relevant common-law traditions of England and the United States, contemporary practices, and the risks inherent in Georgia's practice of requiring capital defendants to prove intellectual disability beyond a reasonable doubt. See id. at 356-69, 116 S.Ct. 1373. This is why several states have relied on Cooper to analyze their states' procedures for determining intellectual disability. See, e.g. , Pennsylvania v. Sanchez , 614 Pa. 1, 36 A.3d 24, 70 (2011) ; Pruitt v. State , 834 N.E.2d 90, 103 (Ind. 2005) ; State v. Williams , 831 So. 2d 835, 859 (La. 2002) ; Murphy v. State , 54 P.3d 556, 573 (Okla. Crim. App. 2002) ; Morrow v. State , 928 So. 2d 315, 324 n.10 (Ala. Crim. App. 2004). The Indiana Supreme Court, for example, overturned its precedent requiring defendants to prove intellectual disability by clear and convincing evidence. See Pruitt , 834 N.E.2d at 103. That precedent had disregarded Cooper because "execution of the [intellectually disabled] had not yet been held to violate the Federal Constitution." Id. at 101. Once Atkins established the constitutional nature of the right, however, Cooper applied and barred the state from requiring the defendant to prove his disability by clear and convincing evidence. Id. at 101-03 ("The reasoning of Cooper in finding a clear and convincing standard unconstitutional as to incompetency is directly applicable to the issue of mental retardation .... [T]he implication of Atkins and Cooper is that the defendant's right not to be executed if mentally retarded outweighs the state's interest as a matter of federal constitutional law.").
Because the Georgia Supreme Court in Head did not conduct the due process analysis required by Cooper , its decision in that case (followed by the superior court here) is not entitled to AEDPA deference. See Williams , 529 U.S. at 406, 120 S.Ct. 1495 (explaining that if a state court applies an incorrect legal standard, "a federal court will be unconstrained by § 2254(d)(1) because the state court decision falls within that provision's 'contrary to' clause").
B
Atkins tasked the states with "developing appropriate ways to enforce the constitutional restriction" on executing the intellectually disabled. See Atkins , 536 U.S. at 317, 122 S.Ct. 2242. That task includes establishing a standard of proof and determining who bears the burden. But states do not have unfettered authority to establish such procedures. As in other areas of the law, "the state procedures must be adequate to protect" the Eighth Amendment prohibition against the execution of the intellectually disabled. See Pate , 383 U.S. at 378, 86 S.Ct. 836. See also Twining v. New Jersey , 211 U.S. 78, 102, 29 S.Ct. 14, 53 L.Ed. 97 (1908) ("The limit of the full control which the state has in the proceedings of its courts, both in civil and criminal cases, is subject only to the qualification that such procedure must not work a denial of fundamental rights."); Bailey v. Alabama , 219 U.S. 219, 239, 31 S.Ct. 145, 55 L.Ed. 191 (1911) ("It is apparent that a constitutional prohibition cannot be transgressed indirectly by the creation of a [procedural rule] any more than it can be violated by direct enactment.").
The burden of proof plays a critical role in our adversarial system because it often *1013 drives the result. "In all kinds of litigation it is plain that where the burden of proof lies may be decisive of the outcome .... There is always in litigation a margin of error, representing error in factfinding, which both parties must take into account." Speiser v. Randall , 357 U.S. 513, 525, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958). The burden of proof "allocate[s] the risk of error between the litigants" and, in so doing, "indicate[s] the relative importance attached to the ultimate decision." Addington v. Texas , 441 U.S. 418, 423, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). This is why we generally use the preponderance-of-the-evidence standard in civil disputes, but demand that the state prove the guilt of an accused defendant beyond a reasonable doubt. See Grogan v. Garner , 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) ("Because the preponderance-of-the-evidence standard results in a roughly equal allocation of the risk of error between litigants, we presume that this standard is applicable in civil actions between private litigants unless 'particularly important individual interests or rights are at stake.' "). Our society recognizes the "magnitude" of the defendant's interests in a criminal case and places a high burden of proving guilt on the government "to exclude as nearly as possible the likelihood of an erroneous judgment." Id. at 423-24, 99 S.Ct. 1804. See also Cruzan v. Dir., Mo. Dep't. of Health , 497 U.S. 261, 283, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990) (noting that the "more stringent the burden of proof a party must bear, the more that party bears the risk of an erroneous decision").
In Cooper , 517 U.S. at 363, 116 S.Ct. 1373, the Supreme Court reiterated that where a constitutional right is at issue, a state may not place a heightened burden on the defendant if doing so "imposes a significant risk of an erroneous determination." See also Lockett v. Ohio , 438 U.S. 586, 604-05, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (plurality opinion) ("[The] qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed .... When the choice is between life and death, [a heightened risk of wrongful execution created by a state statute] is unacceptable and incompatible with the commands of the Eighth and Fourteenth Amendments."). The Court in Cooper reversed the conviction of a capital defendant because Oklahoma required him to prove his lack of competency to stand trial by clear and convincing evidence. See id. at 350, 116 S.Ct. 1373. This burden "allocat[ed] to the criminal defendant the large share of the risk which accompanies a clear and convincing evidence standard" and thus created an unconstitutional risk that the state would "put to trial a defendant who is more likely than not incompetent." Id. at 365, 369, 116 S.Ct. 1373. Oklahoma used this burden even though "the vast majority of jurisdictions" thought the heightened standard was "not necessary to vindicate the[ir] interest in prompt and orderly disposition of criminal cases." Id. at 362, 116 S.Ct. 1373. Because the "consequences of an erroneous determination of competence are dire," the Court held Oklahoma's procedural rule to be "incompatible with the dictates of due process." Id. at 364, 369, 116 S.Ct. 1373.
Here the stakes are just as high, and the burden Georgia places on capital defendants to prove intellectual disability is even higher than the clear-and-convincing standard found unconstitutional in Cooper . Georgia, I note, is also the only state to impose such a burden of proof. See Head , 587 S.E.2d at 630 (Sears, J., dissenting) ("[Georgia] is now the only state that requires condemned defendants to prove their retardation beyond a reasonable doubt."). Of the 25 states that retain and currently enforce the death penalty, 19 *1014 apply a preponderance-of-the-evidence standard and only two apply a clear-and-convincing standard. See generally Lauren S. Lucas, An Empirical Assessment of Georgia's Beyond a Reasonable Doubt Standard to Determine Intellectual Disability in Capital Cases , 33 Ga. St. U. L. Rev. 553, 560-61 (2017).[2] "Not one state has followed Georgia's statutory scheme in implementing the Atkins decision." Id.
Moreover, several states have rejected a clear and convincing standard because no state interest justified the higher burden. See, e.g. , Sanchez , 36 A.3d at 70 ("[W]e are persuaded that a different allocation or standard of proof [than preponderance] are not necessary to vindicate the constitutional right of mentally retarded capital defendants recognized in Atkins , or to secure Pennsylvania's 'interest in prompt and orderly disposition of criminal cases.' "); Pruitt , 834 N.E.2d at 103 ("We do not deny that the state has an important interest in seeking justice, but we think the implication of Atkins and Cooper is that the defendant's right not to be executed if mentally retarded outweighs the state's interest as a matter of federal constitutional law. We therefore hold that the state may not require proof of mental retardation by clear and convincing evidence."); Howell v. State , 151 S.W.3d 450, 465 (Tenn. 2004) ("[W]ere we to apply the statute's 'clear and convincing' standard in light of the newly declared constitutional right against the execution of the mentally retarded, the statute would be unconstitutional. ... [Because] the risk to the petitioner of an erroneous outcome is dire, as he would face the death penalty, while the risk to the State is comparatively modest. ... The balance, under these circumstances, weighs in favor of the petitioner and justifies applying a preponderance of evidence standard at the hearing."); Williams , 831 So. 2d at 859-60 ("Clearly, in the Atkins context, the State may bear the consequences of an erroneous determination that the defendant is mentally retarded (life imprisonment at hard labor) far more readily than the defendant of an erroneous determination that he is not mentally retarded."). Despite being the only state to apply the beyond-a-reasonable-doubt standard, Georgia has never explained how its uniquely high standard furthers a legitimate state interest.[3]
C
Mr. Raulerson asserts that Georgia's beyond-a-reasonable-doubt standard effectively *1015 permits the state to do what the Eighth Amendment forbids-execute a prisoner who is intellectually disabled. Concurring in the judgment in Hill , Judge Tjoflat summarized the due process argument against imposing the beyond-a-reasonable-doubt standard. I think he was prescient, and got it exactly right:
Claims of mental retardation are incredibly fact-intensive and could devolve into a swearing match between conflicting, and equally qualified, experts. This swearing match could easily-if not always-create reasonable doubt that the defendant is not mentally retarded. By erecting this higher burden, the State effectively put its thumb on the scale against a defendant's mental-retardation defense .... [T]he State's unfair thumb-the beyond-a-reasonable-doubt standard-deprive[s a defendant] of full and fair post-conviction hearing, and he would be entitled to an evidentiary hearing in federal court.
Hill , 662 F.3d at 1364 (Tjoflat, J., concurring in the judgment).
Intellectual disability is an inherently imprecise and partially subjective diagnosis. The generally accepted definition of intellectual disability, which Georgia follows, requires three core elements: (1) an intellectual-functioning deficit; (2) an impairment of adaptive behavior (the "inability to learn basic skills and adjust behavior to changing circumstances," Hall v. Florida , 572 U.S. 701, 710, 134 S.Ct. 1986, 188 L.Ed.2d 1007 (2014) ); and (3) the onset of these deficits at an early age. See O.C.G.A. § 17-7-131(a)(2). See also Moore v. Texas , --- U.S. ----, 137 S. Ct. 1039, 1045, 197 L.Ed.2d 416 (2017). Experts must therefore sift through a lifetime's worth of data and draw impressions about whether certain facts or data points satisfy several subjective elements.
Each element presents its own challenges. Experts may measure intellectual functioning through IQ tests, but a person's score can only provide a possible range. As the Supreme Court explained in Hall , where it struck down Florida's use of a strict 70-or-below IQ requirement for Atkins claims, "[a]n individual's IQ test score on any given exam may fluctuate for a variety of reasons" including "a test-taker's health; practice from earlier tests; the environment or location of the test; the examiner's demeanor; the subjective judgment involved in scoring certain questions on the exam; and simple lucky guessing." Hall , 572 U.S. at 713, 134 S.Ct. 1986. And "the test itself may be flawed, or administered in a consistently flawed manner," so that "even a consistent score is not conclusive evidence of intellectual functioning." Id. at 714, 134 S.Ct. 1986. And the age-of-onset element requires an expert to conduct a retrospective analysis to piece together the prisoner's intellectual capacity as a child-often without the benefit of childhood IQ tests, trained child psychologists, or witnesses of the prisoner's childhood behavior. The difficulty of drawing a clear-cut conclusion is compounded by the always-existing phenomenon of dueling experts, who often differ only in terms of degrees.
The intellectual disability analysis, with its inherent difficulties, renders Atkins claims highly susceptible to uncertainty. That uncertainty is magnified by the way Georgia defines the concept of reasonable doubt. In Georgia, the "true question in criminal cases" is "whether there is sufficient evidence to satisfy the mind and conscience beyond a reasonable doubt." O.C.G.A. § 24-14-15. The Georgia pattern jury instructions state that a reasonable doubt can arise from "consideration of the evidence, a lack of evidence, or a conflict in the evidence ." Georgia Suggested Pattern Jury Instruction-Criminal 1.20.10 *1016 (2019) (emphasis added). See also Ward v. State , 271 Ga. 62, 515 S.E.2d 392, 393 (1999) (approving this portion of the pattern jury instruction). Given that intellectual disability disputes will always involve conflicting expert testimony, there will always be a basis for rejecting an intellectual disability claim. Placing a beyond-a-reasonable-doubt burden on a defendant therefore creates an unacceptable risk of error that those with intellectual disabilities will be put to death. If Cooper held that a clear-and-convincing burden cannot be placed on defendants asserting incompetency, I do not see how Georgia can place a beyond-a-reasonable-doubt burden on capital defendants asserting intellectual disability.
The majority says that Georgia's burden of proof cannot transgress the Due Process Clause because Atkins left to the states the ability to craft procedures for intellectual disability claims. But this reasoning disregards how the Supreme Court has interpreted its mandate for the states to create "appropriate " procedures to enforce the constitutional restriction. See Atkins , 536 U.S. at 317, 122 S.Ct. 2242 (emphasis added). See also Moore , 137 S. Ct. at 1053 (" 'If the States were to have complete autonomy to define intellectual disability as they wished,' we have observed, ' Atkins could become a nullity, and the Eighth Amendment's protection of human dignity would not become a reality.' ") (quoting Hall , 572 U.S. at 1999, 134 S.Ct. 1986 ). Would it be permissible for a state to require a capital defendant asserting an Atkins claim to prove intellectual disability "beyond all doubt whatsoever" or with "100% certainty" just because Atkins tasked the states with establishing procedures? The question answers itself-of course not.
In Hall , the Supreme Court recognized that " Atkins did not provide definitive procedural or substantive guides for determining when a person who claims mental retardation falls within the protection of the Eighth Amendment," but it also reiterated that " Atkins did not give the States unfettered discretion to define the full scope of the constitutional protection." 572 U.S. at 718-19, 134 S.Ct. 1986 (quotations omitted). Florida exceeded its permissible discretion by using a strict IQ score because it "ignore[d] the inherent imprecision of these tests [and] risk[ed] executing a person who suffers from intellectual disability." Id. at 723, 134 S.Ct. 1986. So too in Moore , 137 S. Ct. at 1052-53. There, the Supreme Court repeated that "[s]tates have some flexibility, but not unfettered discretion in enforcing Atkins ' holding." Id. (quotations omitted). The Court then held that Texas had overstepped its Atkins authority by disregarding the consensus of the medical community and applying an outdated set of factors to determine intellectual disability-a practice that "create[d] an unacceptable risk that persons with intellectual disability will be executed." Id . at 1044.
Georgia's beyond-a-reasonable-doubt standard is one more manifestation of the same problem. Hall and Moore teach that states violate their discretion under Atkins by establishing procedures that create an unacceptable risk that intellectually disabled prisoners will be executed. Not only has Georgia failed to recognize the practical impediments to proving an intellectual disability claim, but has imposed on capital defendants the heaviest burden in our legal system. Doing so effectively denies those defendants a "fair opportunity to show that the Constitution prohibits their execution." Hall , 572 U.S. at 724, 134 S.Ct. 1986.
II
Sometimes "a page of history is worth a volume of logic."
*1017 N.Y. Trust Co. v. Eisner , 256 U.S. 345, 349, 41 S.Ct. 506, 65 L.Ed. 963 (1921) (Holmes, J.). Should any proof be needed that Georgia's beyond-a-reasonable-doubt standard imposes an insurmountable and unconstitutional demand on capital defendants, we need look no further than how that burden has operated in practice. In the 30 years since § 17-7-131(c)(3) was enacted, not a single capital defendant has succeeded in proving to a factfinder that he or she is intellectually disabled beyond a reasonable doubt.
In Hill , 662 F.3d at 1380 -where we rejected, under AEDPA deference, an Eighth Amendment challenge to Georgia's beyond-a-reasonable-doubt standard-the majority asserted that there was no data "to support the proposition that the reasonable doubt standard triggers an unacceptably high error rate for mental retardation claims." See also id. at 1356 ("There is no data on this question in this record. ") (emphasis in original). That is no longer the case.
Here, the district court held an evidentiary hearing to consider, among other things, whether any Georgia capital defendants had successfully proven their intellectual disability to a judge or jury beyond a reasonable doubt. Prior to that hearing, the district court allowed discovery and required Georgia to respond to interrogatories concerning whether, since 1988, any capital defendants had established intellectual disability beyond a reasonable doubt. Georgia, tellingly, did not provide any cases where a defendant met that standard. See D.E. 38; R1123-33.[4]
The record shows that since 1988 at least 27 Georgia defendants have asserted intellectually disability in cases where the death penalty was sought. See D.E. 38 at 6-8; D.E. 52 at 29-32. In 13 of those cases, the intellectual disability issue went to a factfinder. And not a single one of those 13 defendants was able to satisfy the beyond-a-reasonable-doubt standard. In this context, 13 defendants is a reasonable sample size and a success rate of zero is constitutionally unacceptable.[5]
Other Georgia cases and recent scholarship on this issue confirm this reality. "From an empirical perspective, we can now say with confidence that not one defendant in Georgia has proven successfully to a jury post- Atkins that he is exempt from the death penalty due to intellectual disability." Lucas, Empirical Assessment , at 605. See also id. at 582 ("The final results of the study [reviewing records from 379 capital cases tried after § 17-7-131(c)(3) was enacted] confirmed what was thought anecdotally to be true about the impact of Georgia's beyond a reasonable doubt standard ...: not one capital defendant in Georgia has successfully obtained a jury verdict of [intellectual disability] in a case of intentional murder.").[6]
*1018 By comparison, a national study found that, from 2002 to 2013, 55% of capital defendants succeeded in proving their Atkins intellectual disability claims. See John H. Blume, Sheri L. Johnson, Paul Marcus, & Emily C. Paavola, A Tale of Two (and Possibly Three) Atkins: Intellectual Disability and Capital Punishment Twelve Years After the Supreme Court's Creation of a Categorical Bar , 23 Wm. & Mary Bill Rts. J. 393, 397 (2014) (reviewing cases from 29 states). Not surprisingly, this disparity has raised the attention of experts in the areas of capital punishment and disability policy. See id. ; Lucas, Empirical Assessment , at 553; Lauren A. Ricciardelli & Kristina Jaskyte, A Value-Critical Policy Analysis of Georgia's Beyond a Reasonable Doubt Standard of Proof of Intellectual Disability , 30 J. Disability Pol'y Stud. 56, 58-59 (2019).
Part of the problem is that Georgia's beyond-a-reasonable-doubt standard requires a level of certainty that mental health experts simply cannot provide. Mr. Raulerson's expert witness-a distinguished professor specializing in intellectual disabilities-analyzed cases where Georgia defendants attempted to prove intellectual disability and testified at the district court evidentiary hearing. When asked about the burden imposed by Georgia, she said the following:
[W]hat I know is that the burden in the state of Georgia is beyond a reasonable doubt[,] and what I can say is that it would be very rare for a clinician, especially in the so-called mild mental retardation range, to testify to that high level, to be able to testify to that high level.
D.E. 51 at 71-72. See also Lauren A. Ricciardelli & Kevin M. Ayres, The Standard of Proof of Intellectual Disability in Georgia: The Execution of Warren Lee Hill , 27 J. Disability Pol'y Stud. 158, 165 (2016) (criticizing Georgia's procedures because the "standard of proof for diagnosis requires something other than what a qualified expert in that field can provide").
We now have solid data confirming that Georgia's standard does not afford capital defendants a meaningful opportunity to prove intellectual disability. Must we continue to bury our heads in the sand?
III
"Rules about presumptions and burdens of proof reflect one's views about where the risk of loss ought to be placed .... It is not a novel proposition that judgments inflicting the penalty of death should be hedged about with greater safeguards." Stanley v. Zant , 697 F.2d 955, 974 (11th Cir. 1983) (Arnold, J., dissenting). In my view, § 17-7-131(c)(3) violates the Due Process Clause because a state cannot constitutionally place on a defendant the burden of proving intellectual disability beyond a reasonable doubt. That standard creates an intolerable risk that intellectually disabled defendants will be put to death, and the evidence from the last three decades in Georgia conclusively demonstrates that the standard is in fact insurmountable in litigated capital cases.
*1019 "[T]he procedures by which the facts of a case are determined assume an importance fully as great as the validity of the substantive rule of law to be applied. And the more important the rights at stake the more important must be the procedural safeguards surrounding the rights." Speiser , 357 U.S. at 520-21, 78 S.Ct. 1332. Mr. Raulerson should be allowed to prove to the district court, by a preponderance of the evidence, that he is intellectually disabled.

Ronald J. Allen, How Presumptions Should Be Allocated- Burdens of Proof, Uncertainty, and Ambiguity in Modern Legal Discourse , 17 Harv. J. L. & Pub. Pol'y 627, 639 (1994).

I concur in Parts I, II, and III.A. of the majority opinion. Because I believe that Georgia's beyond-a-reasonable-doubt standard is unconstitutional, I would remand Mr. Raulerson's substantive intellectual disability claim to the district court for an evidentiary hearing under the preponderance-of-the-evidence standard.

Arizona and Florida currently apply a clear and convincing standard. See Ariz. Rev. Stat. § 13-753 (2011); Fla. Stat. § 921.137 (2013). Although Colorado, Delaware, and Indiana passed statutes requiring clear and convincing evidence for Atkins claims, Delaware's death penalty statute was struck down, Colorado no longer enforces the death penalty, and the Indiana Supreme Court has held that a clear-and-convincing standard was unconstitutional under Atkins and Cooper . See Pruitt , 834 N.E.2d at 103. The remaining states that retain and enforce the death penalty (Kansas, Montana, and Wyoming) have not adopted a specific standard of proof for Atkins claims.

In Head , the Georgia Supreme Court stated that the "higher standard of proof serves to enforce the General Assembly's chosen definition of what degree of impairment qualifies as mentally retarded under Georgia law for the purpose of fixing the appropriate criminal penalty that persons of varying mental impairment should bear for their capital crimes, in light of their individual diminished personal culpabilities and the varying degrees of deterrence possible." 587 S.E.2d at 622 (quotations omitted and alterations adopted). Georgia has not asserted such an interest in its briefs, but even if it had, the explanation amounts to no justification at all. The Georgia Supreme Court's reasoning-that the standard of proof is high because the General Assembly defined intellectual disability to require a high standard of proof-is tautological and fails to identify a state interest that the burden of proof actually serves.

Some of this evidence was not available in 2005, when the Georgia Supreme Court denied Mr. Raulerson's appeal. Under AEDPA, our review is normally constrained to the record as established before the state habeas court. See Cullen v. Pinholster , 563 U.S. 170, 181-82, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011). But because the state habeas court's decision here was contrary to established Supreme Court precedent under § 2254(d)(1), de novo review is appropriate. See Daniel v. Comm'r , 822 F.3d 1248, 1280 (11th Cir. 2016). We therefore can, and should, consider the evidence developed in the district court. See Landers v. Warden , 776 F.3d 1288, 1295 (11th Cir. 2015) ; Madison v. Comm'r , 761 F.3d 1240, 1249-50 (11th Cir. 2014).

The intellectual disability claims of 13 defendants are still pending, and one defendant passed away before the state court could determine his intellectual disability claim.

In my own research, I have been able to find one Georgia non-capital defendant who proved to a jury that she was intellectually disabled beyond a reasonable doubt. In 2003-prior to the Supreme Court's decision in Atkins -a jury found Vanessa Marshall guilty but intellectually disabled of felony murder for the unintentional death of her son. See Marshall v. State , 276 Ga. 854, 583 S.E.2d 884, 886 (2003). In 2009, a state court found that Christopher Lewis-a capital defendant-was intellectually disabled beyond a reasonable doubt on habeas review. See Hall v. Lewis , 286 Ga. 767, 692 S.E.2d 580, 584, 592 (2010). In that case, however, Georgia did not credibly challenge Mr. Lewis' claim that he was intellectually disabled and did not appeal the habeas court's determination. So, there was no real dispute. See Hill , 662 F.3d at 1376 n.19 (Barkett, J., dissenting).